**UNITED STATES of America ex rel. Ronald ADAMS, Plaintiff,**

v.

**Michael O'LEARY, et al., Defendants.**

No. 86 C 3817.

United States District Court, N.D. Illinois, E.D.

April 30, 1987.

Donald S. Rothschild, Oak Park, Ill., for plaintiff.

Mary Frances O'Malley, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

On May 29, 1986 Ronald Adams ("Adams") filed a pro se Complaint[1] against three Stateville Correctional Center ("Stateville") employees: Warden Michael O'Leary ("O'Leary"), Assistant Warden Salvador Godinez ("Godinez") and. Counselor Vernette Covin ("Covin").[2] Adams alleges defendants violated his constitutional rights while he was imprisoned at Stateville by denying him (1) a visit from his family February 14, 1986 and (2) "religious privileges." He prays for injunctive relief and punitive damages. Defendants now move for dismissal under Fed.R.Civ.P. ("Rule") 12(b)(6). For the reasons stated in this memorandum opinion and order, their motion is granted in part and denied in part.

### Facts

Rule 12(b)(6) principles require this Court to accept as true all well-pleaded factual allegations, drawing all reasonable inferences in Adams' favor. *Vaden v. Village of Maywood*, 809 F.2d 361, 363 (7th Cir. 1987). Dismissal is warranted "only if it appears beyond doubt that [Adams] can prove no set of facts entitling [him] to relief" (*id.*). Here the facts are best summarized by quoting directly from the Complaint (at 3):

> I went to Stateville on a court writ on 1–29–86 and returned on 3–6–86. While there I wrote the Warden, Asst. Warden,

---

1. Immediately on receipt of any pro se complaint by a litigant seeking in forma pauperis status, this Court of course reviews the pleading to make certain it surmounts the hurdle of non-"frivolousness" defined by *Wartman v. Milwaukee County Court*, 510 F.2d 130, 134 (7th Cir.1975) and *Jones v. Morris*, 777 F.2d 1277, 1279 (7th Cir.1985). If it does, this Court almost invariably appoints counsel from this District Court's trial bar list to represent plaintiff pro bono publico. That was done here, with Donald S. Rothschild ("Rothschild") being appointed to represent Adams. Unfortunately it appears Rothschild has not followed the desirable practice of a prompt meeting with the client, followed by the filing of a redrafted pleading better suited to the requirements of law. As a result, this opinion (required to be issued nearly a year after suit was filed!) has had to wrestle with the problems generated by Adams' own inadequate layman's effort.

2. Adams' Complaint mistakenly refers to Covin as Vernette Coleman. This opinion follows the correct spelling furnished by defense counsel.

and Mrs. Coleman about obtaining visits and having religious priviledges. Mrs. Coleman finally said it would be okay if my family came down. On 2–14–86 my family came down and were turned away. While there none of these rights are given to an inmate. These are in violation of my constitutional rights.[3]

### Defendants' Contentions

Though Adams does not identify what specific constitutional rights defendants allegedly violated, D. Mem. interprets the Complaint (and Adams Mem. is silent on the point[4]) as asserting claims under 42 U.S.C. § 1983 ("Section 1983") for:

1. deprivation of liberty without due process (through the February 14 denial of a family visit) in violation of the Fourteenth Amendment (the "Due Process Claim"); and

2. deprivation of religious freedom in violation of the First Amendment (the "Religious Freedom Claim").[5]

Defendants move to dismiss each of those assertions as failing to state a claim upon which relief may be granted and as barred under the Eleventh Amendment. In addition, O'Leary and Covin move for dismissal for lack of personal involvement in the alleged constitutional violations.

### Religious Freedom Claim

Adams' Complaint says only (1) he asked Covin about "having religious priviledges" and (2) "none of these rights [possibly referring in part to the right to religious privileges] are given to an inmate." Because the Complaint does not indicate what "religious privileges" Adams was al-

legedly denied or whether he was still denied those privileges after he requested them, the Complaint (even when liberally construed) fails to state a claim under the First Amendment for which relief may be granted.[6] Defendants' motion to dismiss the Religious Freedom Claim is granted.

### Due Process Claim

Under the Fourteenth Amendment a State may not deprive a person of life, liberty or property without due process of law. Adams' Complaint (as interpreted by the parties) alleges he was denied a liberty interest in visiting with his family February 14 and that denial was without due process. D. Mem. challenges only the sufficiency of the first component of that claim, urging Adams had no protected liberty interest in visiting with his family.

That calls for an examination of Illinois substantive law, for *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983) (citations omitted) teaches:

These cases [prior decisions on state-created liberty interests] demonstrate that a State creates a protected liberty interest by placing substantive limitations on official discretion. An inmate must show "that particularized standards or criteria guide the State's decisionmakers." ... If the decisionmaker is not "required to base its decisions on objective and defined criteria," but instead "can deny the requested relief for any constitutionally permissible reason or for no reason at all," ... the State has not created a constitutionally protected liberty interest.[7]

---

3. Because all the relevant dates were in 1986, no further year designations will be made.

4. This footnote has been omitted.

5. As this Court has frequently had occasion to note, in Section 1983 cases (which by definition are targeted against state actors) it is imprecise—though highly convenient and therefore almost universally done—to refer to violations of Bill of Rights provisions (which by definition are directed only against the federal government). Instead all such Section 1983 constitutional claims are necessarily grounded in the Fourteenth Amendment, construed to incorpo-

rate the Bill of Rights guaranties. This opinion follows the common usage to facilitate distinguishing between Adams' two claims.

6. Even Adams Mem. does not argue the Complaint states a First Amendment claim.

7. Protected liberty interests may arise from the Due Process Clause itself as well (*Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983)). Here the parties properly treat Adams' Complaint as alleging the denial of a state-created liberty interest. After all, Adams attacks only the denial of a single visit—not a denial of "visitation rights" generally (the latter

Ill.Rev.Stat. ch. 38, ¶ 1003–7–2(f) ("Section 1003–7–2(f)") (emphasis added) reveals Illinois does indeed "plac[e] substantive limitations on official discretion" to deny visitation to inmates:

> All of the institutions and facilities of the Department *shall* permit every committed person to receive visitors, *except* in case of abuse of the visiting privilege or when the chief administrative officer determines that such visiting would be harmful or dangerous to the security, safety or morale of the institution or facility.

By using the mandatory term "shall," the provision makes plain prison officials *must* permit inmates to receive visitors *except* when the two enumerated conditions—conditions that constitute "objective and defined criteria" in the sense employed in *Olim*—are met (cf. *Hewitt*, 459 U.S. at 471–72, 103 S.Ct. at 871).

D. Mem. 6 urges Section 1003–7–2(f) did not fetter defendants' discretion to deny Adams' February 14 visit with his family because:

> [Adams] never complied with the institution's security procedures and therefore the defendants could not have violated the plaintiff's right to visitation for it was encumbent [sic] upon [Adams] to first comply with the requisite security procedure.

In support of that conclusion, D. Mem. supplies two exhibits:

1. Exhibit A is a copy of a February 22 letter purportedly written by Adams and sent to O'Leary, requesting permission to receive family visitors February 28.

2. Exhibit B is a copy of Illinois Department of Corrections Rule § 525.20 ("Section 525.20"), providing in part:

> (b) At the time of admission, a committed person shall submit a list of proposed visitors to designated facility staff. A visiting list shall be established after verification, review and approval by the Chief Administrative Officer or his designee.
>
> (1) Department staff may interview or request background information from potential visitors to determine whether the individual would pose a threat to the security or safety of the facility staff, committed persons or other persons.

Rather than responding to the defendants' argument based on those two exhibits, Adams Mem. 2–3 simply notes (quite correctly) the letter may not even be considered in deciding the Rule 12(b)(6) motion because it constitutes material outside the pleadings.[8] As for Section 525.20, this opinion will assume (despite defendants' lack of showing under Fed.R.Evid. 201) judicial notice may be taken of its provisions.

■ From the Complaint buttressed by the required favorable inferences, this Court must deny defendants' motion to dismiss for failure to state a claim under the Due Process Clause. Illinois law certainly creates a liberty interest in receiving visitors, and Adams has alleged Covin specifically told him the February 14 visit would be permitted but then defendants (for no apparent reason) denied him that visit.

---

challenge could not be made, given the statute next discussed in the text). This Court is not called on, then, to consider whether there is a substantive right to visitation under the Due Process Clause absent a state-law creation of such a right—a questionable proposition (see *Toussaint v. McCarthy*, 801 F.2d 1080, 1113 (9th Cir.1986) and cases cited there).

**8.** True enough, the last sentence of Rule 12(b) allows (but does not require) this Court to convert the motion to a Rule 56 summary judgment motion, thus taking into account properly grounded evidentiary material. But that is seldom a desirable alternative early in the life of a lawsuit. Usually it simply reflects careless inattention to the proper concept of a Rule 12(b)(6) motion on the part of the lawyer tendering the hybrid submission. All D.R. Mem. 2 says on the subject (advancing the analysis not a bit) is this:

> In response to the plaintiff's belief that the inclusion of material outside of the pleadings is improper, it is the defendants' belief that such material is allowable under Rule 12(b) of the Federal Rules of Civil Procedure.

Of course the material is "allowable," but the proper exercise of the discretion vested in this Court by Rule 12(b) leads to its rejection of the piecemeal submission at this point in the litigation.

That scenario necessarily survives a dismissal motion.

Indeed, suppose this Court were itself to violate Rule 12(b)(6) principles by assuming Adams did not comply with Section 525.20.[9] That would still not change the outcome. Section 525.20 is (or at least appears to be) a regulation promulgated by the Department of Corrections to provide prisoners with the visitation rights to which they are entitled by statute: Section 1003–7–2(f). D. Mem. 6–7 explains that regulation is needed to maintain security in the prison, and it therefore urges defendants properly denied Adams' February 14 visit for failure to comply with the regulation.

Even on that impermissible assumption of Adams' noncompliance, defendants ignore Adams' allegation that Covin *granted* Adams' request for a February 14 visit from his family. Armed with the mandated favorable inferences, that allegation would mean defendants had waived their own regulation by authorizing the visit despite Adams' assumed noncompliance. After all, nothing precludes prison officials from waiving their own security regulations when they believe it warranted. For aught that appears, defendants may have decided it wasteful to expend resources compiling a "visiting list" for a prisoner who would remain at Stateville for only five weeks.

What matters is not why but whether defendants waived their own visitation procedures when Adams requested the February 14 visit. And that is not an issue this Court is able to resolve based solely on the Complaint's allegations. It is worth noting that if defendants *did* waive those Section 525.20 procedures, they may not assert Adams' noncompliance with Section 525.20 precluded him from having a reasonable expectation of, and hence a liberty interest in, the February 14 visit based on Covin's approval.

9. Of course the mere fact Adams later wrote a letter requesting a February 28 visit does not compel the inference he had not also followed Section 525.20 procedures *before* the aborted February 14 visit of which he now complains.

## Eleventh Amendment

■ D. Mem. 8 asserts this action is against defendants in their "official" capacities and therefore is barred by the Eleventh Amendment.[10] Were defendants' premise that this is an official-capacity suit correct, Adams' claim for punitive damages would be barred (*Brunken v. Lance*, 807 F.2d 1325, 1329 (7th Cir.1986)). That is so because a suit against a state employee in his or her official capacity is treated as a suit against the State itself, so any damage award must be paid from State funds (*id.*).

■ But the Complaint does not compel the reading that Adams is suing defendants only in their official capacities. Although the Complaint lists each defendants' title after his or her name, that creates only a rebuttable presumption the suit is against defendants in their official capacities (*Duckworth v. Franzen*, 780 F.2d 645, 649 (7th Cir.1985), *cert. denied*, —— U.S. ——, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986)). Again it must be remembered the Complaint was prepared by someone unlettered in the arcane distinctions erected by the cases in this area. If it turns out Adams intends to sue defendants in their "personal" capacities (as anyone would surely do once informed of the consequences, and as Adams is free to assert at any time during the litigation, *id.*) the punitive damages claim is not barred by the Eleventh Amendment—for then the award is executed only against the defendants' personal assets (*Brunken*, 807 F.2d at 1329).

Because this Court must draw all reasonable inferences in Adams' favor in deciding this Rule 12(b)(6) motion, it also denies defendants' motion to dismiss on Eleventh Amendment grounds. However the Amended Complaint ordered later in this opinion will be required to state expressly in what capacity each defendant is sued.

## Lack of Personal Involvement

■ Relying on *Johnson v. Lane*, 596 F.Supp. 408, 409 (N.D.Ill.1984) and the es-

10. True to form, Adams Mem. is of no assistance in resolving that issue. Of its entire two pages of argument (!), not a sentence is devoted to the Eleventh Amendment question.

tablished authorities on which that decision rests, D. Mem. 8 next urges:

> Therefore, the reasons set forth above [a description of the *Johnson* opinion], defendants Covin and O'Leary should be dismissed for there is no direct involvement by either Covin or O'Leary in the decision to approve whether an individual will be allowed visitation privileges.[11]

Defendants' counsel has to be well aware this Court may not grant the Rule 12(b)(6) motion based on that bald assertion as to Covin's and O'Leary's noninvolvement. On the contrary, this Court must accept as true the well-pleaded Complaint allegations that:

> 1. Adams wrote *all* defendants, requesting the February 14 family visit.
> 2. Covin granted Adams' request.
> 3. Adams was not permitted to visit with his family that day.

Nothing in those allegations affirmatively shows Covin or O'Leary lacked personal involvement in denying Adams' February 14 visit (though that may well prove to be so on later factual inquiry). Defendants' motion to dismiss Covin and O'Leary has to be denied as well.

### Conclusion

Defendants' motion to dismiss is granted as to Adams' Religious Freedom Claim and denied in its entirety as to his Due Process Claim. Nonetheless Rothschild is ordered to file on or before May 18, 1987 an Amended Complaint on Adams' behalf, properly addressing the series of matters on which this opinion has had to engage in guesswork, and defendants are ordered to answer or otherwise plead to that Amended Complaint on or before June 1, 1987.[12] This action is set for a further status report June 11, 1987 at 9:15 a.m.

---

**11.** As with the Eleventh Amendment issue, Adams Mem. again does not bother to respond to D. Mem.'s argument.

**12.** This footnote has been omitted.