Allen H. BECK, et al., Plaintiffs,

and

Arnulfo Cantu and Jimmy Mark Appleman, Plaintiffs-Appellants,

v.

James A. LYNAUGH, Director, Texas Department of Corrections, et al., Defendants-Appellees.

No. 87-2383
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 18, 1988.

Arnulfo Cantu, pro se.

Jimmy Mark Appleman, pro se.

Rowena Young, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for defendants-appellees.

Before POLITZ, JOHNSON, and HIGGINBOTHAM, Circuit Judges.

POLITZ, Circuit Judge:

Five of the original prisoner-plaintiffs in this 42 U.S.C. § 1983 complaint appeal the dismissal of the action as frivolous under 28 U.S.C. § 1915(d). The appeals of three were dismissed for want of prosecution. We affirm in part and reverse in part and remand.

*Background*

Jimmy Mark Appleman, Arnulfo Cantu, Joe Feijoo, Ricardo Flores, Juan Franco, and eight other inmates confined to administrative segregation in the "Retrieve Unit" of the Texas Department of Corrections at Angleton, Texas, filed the instant § 1983 complaint, claiming myriad constitutional violations. The alleged violations relate to their incarceration in the Retrieve Unit between November 1984 and December 1986. During that time it is alleged that individually or collectively plaintiffs were: (1) subjected to barbaric living conditions, (2) denied face-to-face legal visits with other inmates, (3) prohibited from attending weekly religious services, (4) denied sufficient recreation periods, (5) denied adequate rehabilitative and educational opportunities, (6) denied access to the courts because they had an inadequate supply of copy paper and no opportunity to reproduce documents, (7) denied commissary privileges, (8) denied visitation privileges accorded the general prison population, and (9) deprived of their personal property, namely "stingers" or immersion heaters, without a predeprivation hearing. Complainants seek injunctive relief and damages in excess of thirty million dollars. Proceeding *pro se*, complainants sought *in forma pauperis* status under 28 U.S.C. § 1915(a).

The district judge conducted a *Spears*[1] hearing, first taking the testimony of Appleman who began reading from a prepared text. To expedite the matter the court directed Appleman to submit the written statement. Then Allen Beck addressed the court on the specifics of the complaint. Upon learning of Beck's educational background that included some college time, the instrumental part he had played in organizing the plaintiffs, and his thorough understanding of the various allegations, the court designated him as spokesman for the group. The other plaintiffs were not interviewed.

Beck's testimony amplified and provided details of the various complaints. The prisoners based the barbaric-conditions charge on the failure of the authorities to replace windows in the segregation unit which prior inmates had broken. As a result, from November 1984 through April 1985 the prisoners were exposed to the elements, including, during the winter months, bitter cold, wind, and rain. Rainwater allegedly collected and remained in puddles on the floor. Complainants allege that they did not receive blankets or coats to cope with the subfreezing temperatures. In addition, they contend that TDC officials prohibited prisoners in administrative segregation from attending weekly religious services.

The district court dismissed the complaint as frivolous under 28 U.S.C. § 1915(d). Appleman, Cantu, Feijoo, Flores, and Franco filed notices of appeal. Appleman and Cantu moved to proceed *in forma pauperis* and filed appellate briefs. Cantu, Feijoo, Flores, and Franco moved

1. *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985).

for appointment of counsel. The appeals of Feijoo, Flores and Franco were dismissed for want of prosecution. By order dated July 21, 1987. Loc.R. 42.3.2.

### Analysis

■ The first contention is that the trial court erred by appointing Beck spokesman for the plaintiffs. The prisoners suggest that the court should have heard from every plaintiff. We do not agree. In *Spears* we encouraged district courts to employ hearings to explore the frequently vague and conclusionary allegations in *pro se* pleadings. We neither required nor suggested hearings to review all prisoner complaints. Nor did we suggest that every *pro se* complainant should be allowed to explain or amend his complaint orally. *Green v. McKaskle*, 788 F.2d 1116 (5th Cir.1986). The district court committed no error and did not abuse its discretion by having Beck explain the allegations common to the complainants.

■ Appellants next contend that the court erred in dismissing the entirety of the complaint as frivolous. A dismissal of an action as frivolous is appropriate where it is clear that the plaintiff can prove no set of facts in support of the claim, the claim has no arguable basis in law or in fact, or there is little realistic chance of ultimate success. *Cay v. Estelle*, 789 F.2d 318 (5th Cir.1986). Viewed in this light, the dismissal of the bulk of the allegations was appropriate. We disagree, however, as relates to the charges of unconstitutional living conditions and denial of access to religious services.

■ In dismissing the complaint revolving around the exposure to the elements during winter months because of the missing window panes, the court considered dismissal in order because "there was no evidence that any harm was caused maliciously or deliberately by responsible people." The court noted that prisoners had broken the windows. This is not the applicable standard.

■ In *Foulds v. Corley*, 833 F.2d 52 (5th Cir.1987), we recently held that the standard to be applied to this type claim, which does not involve "significant risks to the rights of inmates and prison staffs," is the "traditional eighth amendment standard: was the infliction of pain 'unnecessary and wanton?'" *Id.* at 54–55 (*citing Whitley v. Albers*, 475 U.S. 312 (1986)). Broadly construed, appellants' allegations state a cause of action under this standard.

■ Further, the denial of access to religious activities, an issue not mentioned by the district court in its dismissal, may not appropriately be deemed frivolous. "The Constitution requires that 'reasonable opportunities must be afforded to all prisoners to exercise ... religious freedom.' *Cruz v. Beto*, 405 U.S. [319] at 322 n. 2, 92 S.Ct. [1079] at 1081 n. 2, 31 L.Ed.2d [263] at 268 n. 2 (1972)." *Green v. McKaskle*, 788 F.2d at 1126. We agree with the observations of our colleagues of the Second Circuit "that not every prisoner in segregation can be excluded from chapel services; because not all segregated prisoners are potential troublemakers, the prison authorities must make some discrimination among them." *Mawhinney v. Henderson*, 542 F.2d 1, 3 (2d Cir.1976).

As to these two complaints, we vacate the dismissal and remand for further proceedings as respects Cantu and Appleman. In all other respects we affirm the district court's ruling, finding no merit in the remaining complaints. We note those briefly.

■ Appellants complain that their immersion heaters were confiscated without a predeprivation hearing. Due process is not implicated. *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). The necessity for quick action by the state coupled with an adequate postdeprivation hearing obviates the need for a predeprivation hearing. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). We are cognizant of the reality that the security demands of a segregation unit require a capacity for quick and decisive action. We perceive no more here.

As to the complaint of the lack of an educational program, we have held, however worthwhile and prudent such a program might be, that a state has no constitutional obligation to provide basic educational or vocational training to prisoners. *Newman v. State of Alabama,* 559 F.2d 283, 292 (5th Cir.1977), *rev'd in part on other grounds sub nom., Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed. 2d 1114 (1978).

The complaint about the denial of meaningful access to the courts by the denial of face-to-face meetings with other prisoners is patently frivolous. The relevant "legal-type" assistance needed does not require such meetings although they typically might be of value. *See Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The same assessment applies to the contention that access to the courts was impaired by the lack of copy paper and non-access to reproduction equipment. The four volumes of pleadings now before us belie that contention.

We find no validity to the complaint about lack of exercise opportunities, nor of the claim that the general prison population has more liberal commissary and visitation privileges. Appellants contend the latter violates the consent decree in *Ruiz v. Estelle,* 679 F.2d 1115 (5th Cir.1982). These allegations must, on their own merit apart from the *Ruiz* consent decree, represent constitutional violations for relief under § 1983. *Green v. McKaskle.* They do not.

Further, appellants would raise on appeal issues not presented to the district court. This they may not do. *Masat v. United States,* 745 F.2d 985 (5th Cir.1984).

Finally, complainants seek injunctive relief. None of them is now in the Retrieve Unit; thus, they may not seek injunctive relief. *DeFunis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974); *Savidge v. Fincannon,* 836 F.2d 898 (5th Cir.1988).

### Conclusion

The complaint about the conditions in the Retrieve Unit from November 29, 1984 to February 20, 1985, and about the denial of access to religious services cannot be summarily rejected as frivolous. All other complaints are frivolous.

Inherent in our disposition today is the granting of IFP status on appeal, and the denial of the motion for appointment of counsel.

AFFIRMED in part, REVERSED in part and REMANDED.