**Albert LANDFAIR, Plaintiff,**

**v.**

**Michael SHEAHAN, et al., Defendants.**

**No. 94 C 1336.**

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 22, 1995.

---

Albert Landfair, pro se.

Patrick Malone Blanchard, State's Atty. of Cook County, Chicago, IL, Terry L. McDonald, Cook County State's Atty., Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Albert Landfair brings this pro se complaint under 42 U.S.C. § 1983 against Michael Sheahan, Sheriff of Cook County, J.W. Fairman, Executive Director of the Cook County Department of Corrections, Ernesto Velasco, Superintendent of Cook County Jail, Officer Yvette Houser and Paramedic Marla Flood (collectively "Defendants"). Defendants have moved to dismiss the complaint, and for the reasons set forth below their motion is granted in part and denied in part.

### I. Background

Landfair was a pretrial detainee at the Cook County Jail ("CCJ") in 1993–94. He claims in his original and amended complaint that various conditions at the CCJ were so atrocious as to violate his constitutional rights. First, he claims that although his tier was designed for only forty persons, as many as ninety-five inmates have been housed there at one time. Such crowding has led authorities to place up to three inmates into a cell, and forced Landfair to sleep on the floor.[1] Plaintiff also asserts that CCJ officials have failed to provide "the minimum amount of medical care, towels, toilet paper, toothpaste, toothbrush or a means to even wash the soiled or smelly clothing" he is given to wear, presumably because of the crowded conditions at CCJ.

---

1. As Defendant's point out in their motion to dismiss, it is unclear whether plaintiff simply viewed these conditions or was actually forced to sleep on the floor. Nonetheless, for purposes of this motion we will assume that he slept on the floor.

Second, Landfair contends that the jail shower drains were clogged for much of the time he was there, causing him to develop athlete's foot. He also alleges that only three of the five showers on the tier were operational. These problems were known to jail officials, Landfair contends, and the contractors hired to perform repairs were either incompetent or indolent.

Third, plaintiff alleges that Paramedic Flood refused to provide him with a prescribed foot soak medication, as well as aspirin or cold tablets. Also with regard to defendant Flood, plaintiff complains that on two occasions his prescription contained the wrong date and one other time it did not contain a physician's signature.[2]

Fourth, plaintiff complains that the food served at the CCJ is unsanitary, and that the restroom and dayroom of his tier contained exposed electrical wires. However, Landfair admits that the wires were repaired in May 1994.

Fifth, he claims that defendant Houser took revenge on him for complaining about her failure to allow a paramedic to enter the tier by (1) restricting television viewing, (2) not turning the showers on, (3) restricting phone privileges, and (4) "shaking-down" all the inmates, and informing them that Landfair's complaint was the reason for this treatment. Plaintiff also complains that he was the last person in his tier to be served a meal, and he was prevented from receiving visitors or shopping at the commissary during the week prior to his transfer to the Joliet Correctional Center in May 1994, all as part of his punishment for filing the grievance.[3] He seeks both injunctive and monetary relief for these alleged violations.

■ Defendants have moved to dismiss Landfair's complaint pursuant to Rule

12(b)(6). Plaintiff has responded with a brief in opposition and an affidavit reaffirming the allegations of his complaint. Believing that this affidavit transforms defendants' motion into one for summary judgment, Fed. R.Civ.P. 12(b),[4] plaintiff has also moved under Rule 56(f) to "stay the proceedings until discovery can be conducted.". However, because defendants' motion attacks the legal sufficiency of plaintiff's complaint we need not consider his affidavit in deciding that issue. Rather, in keeping with the spirit of *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), we will consider his pleadings amended by the additional allegations in his affidavit. Consequently, we deny plaintiff's Rule 56(f) motion and consider the merits of defendants' motion.

## II. Discussion

■ A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Johnson v. Martin,* 943 F.2d 15, 16 (7th Cir.1991). At this stage in the litigation, we take plaintiff's version of the facts alleged in the complaint to be true and construe all reasonable inferences in his favor. *Bane v. Ferguson,* 890 F.2d 11, 13 (7th Cir.1989). While complaints drafted by pro se litigants are not held to the same standards as those written by practicing attorneys, *Kelley v. McGinnis,* 899 F.2d 612, 616 n. 8 (7th Cir. 1990), complaints based on unsupported conclusions of fact and conclusions of law are not sufficient to withstand a motion to dismiss. *Cushing v. Chicago,* 3 F.3d 1156, 1160–61 n.

---

**2.** Plaintiff alleges that he reported these problems in a December 1993 grievance report to Superintendent Velasco, but received no reply.

**3.** Plaintiff also alleges that the conditions of the jail were improved during inspections by the John Howard Association. We fail to understand how an increase in the amenities and services at the CCJ can constitute a violation of plaintiff's due process rights, and so we decline to address these allegations.

**4.** The relevant portion of Rule 12(b) states:

> If, on a motion asserting the defense numbered (6) to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 56.

5 (7th Cir.1993); *Watters v. Harris*, 656 F.2d 234, 240 (7th Cir.1980).

■ Conditions of confinement claims brought by pretrial detainees are evaluated under the Due Process Clause of the Fourteenth Amendment, which protects against the imposition of "punishment" prior to an adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 1871–1872, 60 L.Ed.2d 447 (1979). Analysis of a pretrial detainee's claims are two-pronged: (1) prison officials must act with deliberate indifference—intentional or with criminally reckless conduct—in order for the subjective component to be satisfied, *Salazar v. Chicago*, 940 F.2d 233, 237–39 (7th Cir.1991), and (2) the alleged deprivations must be sufficiently serious to offend the objective component of the Due Process Clause. *Hines v. Sheahan*, 845 F.Supp. 1265, 1267 (N.D.Ill.1994); *see also Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). With regard to conditions of confinement claims, the objective prong is essentially the same as the inquiry undertaken in Eighth Amendment cases, since both sections require administrators to provide at least the minimal civilized measure of life's necessities. *See Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981).

### A. Subjective Component

■ Although plaintiff does not indicate whether he brings suit against Defendants in their individual or official capacities, we will evaluate his claims under both theories. With regard to plaintiff's official capacity claims, plaintiff must allege that the purported deprivations resulted from an official policy or custom of Cook County. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–2038, 56 L.Ed.2d 611 (1978). Nowhere in his complaint does Landfair contend that Cook County maintains a policy or custom which caused the allegedly unconstitutional conditions. Rather, he attributes all of his problems at the CCJ to acts of the particular defendants. However, given the extremely deferential pleading standard for municipal liability outlined in *Leatherman v. Tarrant County Narcotics Intelligence & Coordina-*

*tion Unit*, —— U.S. ——, ——, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993), and the reasonable inference in Landfair's complaint that the CCJ enforced a custom or policy of providing inadequate supplies and housing, *see Watson v. Sheahan*, No. 93 C 1871, 1994 WL 95782, at *3, 1994 U.S.Dist. LEXIS 3249, at *10 (N.D.Ill. March 18, 1994), we cannot say plaintiff has failed to allege official capacity claims against the defendants. While we express serious doubts as to Landfair's ability to prevail on any official capacity claim, we allow him to go forward at this point. *See Leatherman*, —— U.S. at ——, 113 S.Ct. at 1163 (Absent amendment of Rules 8 and 9, "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later.")

■ With regard to his individual capacity claims, plaintiff must allege that each defendant caused or participated in the conduct at issue, *Cygnar v. Chicago*, 865 F.2d 827, 847 (7th Cir.1989), and that such action was taken intentionally or with criminal recklessness. *Salazar*, 940 F.2d at 239. With regard to defendant Michael Sheahan, plaintiff simply asserts that as Sheriff of Cook County he should be aware of the conditions at CCJ. While in most instances this conclusory statement would be insufficient to ground a claim of individual liability, plaintiff's pro se status forces us to give him more leeway. It is reasonable to infer that as Sheriff of Cook County, Sheahan was aware of the overcrowding at CCJ and the problems which accompanied it. Moreover, defendant Sheahan is in a better position than Landfair to identify the exact official who would be directly responsible for the specific conditions at issue. While plaintiff must still demonstrate Sheahan's individual involvement in order to prevail at trial, at this stage we find that he has sufficiently stated a claim against Sheahan. *Watson v. Sheahan*, No. 93 C 1871, 1994 WL 95782, at *2, 1994 U.S.Dist. LEXIS 3249, at *6–8 (N.D.Ill. March 18, 1994).

■ Plaintiff has also satisfactorily plead the subjective element of his claims as to the other Defendants. Landfair argues that Fairman and Velasco were aware of the con-

ditions, since he submitted grievance reports to them and they visited his wing periodically. Finally, Paramedic Flood and Officer Houser are alleged to have intentionally taken specific action against plaintiff.

### B. Objective Component

While prisons are prohibited from denying inmates the minimal necessities of life, they need not provide a comfortable environment in which to live. *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981); *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir.1988) (prisoners "cannot expect the amenities, conveniences and services of a good hotel"). Rather, extreme deprivations must be alleged in order to make out a conditions of confinement claim, and claims of inadequate medical care only arise where there has been deliberate indifference to "serious" medical needs. *Hudson v. McMillian,* 503 U.S. 1, 8–9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992). We address Landfair's allegations in seriatim.

### 1. Sleeping Conditions

Reading Landfair's complaint generously, he contends that he was housed in cells with two other inmates and forced to sleep on a mattress on the floor. Generally, claims by inmates that they are forced to sleep on the floor are dismissed at this stage, since " 'the Constitution is indifferent as to whether the mattress a detainee sleeps on is on the floor or in a bed.' " *Chavis v. Fairman,* No. 92 C 7490, 1994 WL 55719, at *4 (N.D.Ill. Feb. 22, 1994) (quoting *Lynch v. Sheahan,* 92 C 1087, 1992 WL 132525 (N.D.Ill. May 29, 1992)); *Hines v. Sheahan,* 845 F.Supp. 1265, 1269 (N.D.Ill.1994). However, in his original complaint Landfair contends that the sanitary conditions at the CCJ coupled with the sleeping arrangements led him to contract meningitis. While we express serious doubts as to the veracity of Landfair's allegation, contracting such a serious disease would clearly satisfy the objective prong of *Wilson v. Seiter.* Accordingly, we cannot dismiss his claim at this stage.

### 2. Inadequate Supplies

Plaintiff bemoans "the lack of cleaning supplies, the lack of clean clothing changes ..., the lack of clean linen.... [and the failure to provide] the minimum amount of medical care, towels, toilet paper, toothpaste, toothbrush or a means to even wash the soiled or smelly clothing that we are forced to wear." Amended Complaint, at 5(1). Although plaintiff's allegations are sparse and lack any factual detail, we cannot conclude that they are so insufficient as to fall below the liberal pleading requirements of pro se prisoners. To be sure, simply because plaintiff did not receive what he believes to be the "minimum" amount of supplies does not render his confinement unconstitutional. *See Harris v. Fleming,* 839 F.2d 1232, 1253–54 (7th Cir.1988) (failure to provide toilet paper for five days, and failure to provide soap, toothbrush and toothpaste for ten days not unconstitutional condition of confinement). However, because Landfair's complaint does not indicate how long he went without such supplies, it is possible that the deficiency continued for such an extended period of time as to warrant constitutional recognition. While Landfair eventually may be unable to prove that the conditions at the CCJ amounted to an "extreme deprivation," we cannot say at this point that he will be unable to present any set of facts entitling him to relief on this claim. *See Watson v. Sheahan,* No. 93 C 1871, 1994 WL 95782, at *4–5, 1994 U.S.Dist. LEXIS 3249, at *14–16 (N.D.Ill. March 18, 1994). Accordingly, Defendants' motion to dismiss these claims is denied.

### 3. Shower Conditions

Plaintiff next complains that deficiencies with the plumbing in the showers at the CCJ caused him to develop athlete's foot.[5] While no doubt uncomfortable, athlete's foot cannot be considered an injury serious enough to satisfy the objective component of *Wilson v. Seiter.* Cf. *Harris v.*

---

**5.** Landfair also contends that the contractors hired by defendants to conduct repairs at the CCJ did not perform quality work. This claim must fail, since he does allege that this conduct caused him any injury. *See O'Shea v. Littleton,* 414 U.S. 488, 493–94, 94 S.Ct. 669, 674–75, 38 L.Ed.2d 674 (1974) (plaintiff must allege injury or immediate danger of direct injury).

*Fleming,* 839 F.2d 1232, 1253–54 (7th Cir. 1988) (failure to provide toilet paper for five days, and failure to provide soap, toothbrush and toothpaste for ten days not unconstitutional condition of confinement). Indeed, we would be hard pressed to characterize plaintiff's condition as amounting to an "extreme deprivation." *Hudson v. McMillian,* 503 U.S. 1, 8–9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992).

■ Landfair also contends that only three showers were available for the entire wing. While this circumstance is unfortunate, we cannot say that it crosses the line of unconstitutionality. Indeed, this Circuit has held that providing prisoners only one shower per week does not offend the Constitution. *Davenport v. DeRobertis,* 844 F.2d 1310, 1316 (7th Cir.), *cert. denied,* 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988). Absent any indication that the CCJ fell below this standard, Landfair's claim must be dismissed.

### 4. Medical Treatment

■ Landfair claims that defendant Flood refused to provide him with his prescribed foot soak medicine, aspirin or cold tablets. Plaintiff also claims that on two occasions his prescription was incorrectly dated, and at one other time it did not contain a physician's signature. In order to raise a constitutional challenge to the medical treatment received at the CCJ, plaintiff must demonstrate that Defendants were deliberately indifferent to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Salazar v. Chicago,* 940 F.2d 233, 237–38 (7th Cir.1991). Although plaintiff has properly alleged deliberate indifference, his complained of injury—athlete's foot—did not present a risk of "serious injury or death." *See Martin v. Tyson,* 845 F.2d 1451, 1457–58 (7th Cir.) (delay in treating tooth ache and ear infection not sufficiently serious), *cert. denied,* 488 U.S. 863, 109 S.Ct. 162, 102 L.Ed.2d 133 (1988). Nor does he contend that Defendants' actions aggravated his condition to such a degree as to risk serious injury or death.

■ So too with his contention that he received misdated or unsigned prescriptions.

Aside from the strong possibility that such conduct would only amount to negligence, *see Goka v. Bobbitt,* 862 F.2d 646, 650 (7th Cir. 1988) (negligence alone insufficient to state a claim), there is no indication that these actions satisfied the objective component of *Wilson v. Seiter.* Because Landfair's allegations about his medical treatment do not indicate that he was at risk of incurring serious injuries or death, Defendants' motion to dismiss these claims is granted.

### 5. Food

■ Plaintiff asserts that food delivery at the CCJ is unsanitary, since spillage remains on the food carts for several days and foreign objects are in the food. Prisons are required to "provid[e] nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *French v. Owens,* 777 F.2d 1250, 1255 (7th Cir.1985), *cert. denied,* 479 U.S. 817, 107 S.Ct. 77, 93 L.Ed. 2d 32 (1986). However, plaintiff's complaint does not indicate that the conditions of the food service "present[ed] an immediate danger to [his] health and well being." Absent any indication that the CCJ food presented such a threat, Landfair cannot maintain his claim. *See Chavis,* 1994 WL 55719, at *3.

### 6. Exposed Electrical Wires

■ Plaintiff asserts that live electrical wires were exposed in the restroom and dayroom of his tier. However, he also admits that these wires were repaired in May 1994. Absent any indication that these wires caused plaintiff serious injury, or presented a imminent risk of such injury, the fact that wires were merely exposed does not raise a constitutional claim. Accordingly, Defendants' motion to dismiss this claim is granted.

### 7. Retaliation by Officer Houser

■ Landfair maintains that after he filed a grievance report against Officer Houser for not allowing a paramedic to visit his wing, she retaliated against him by revoking various privileges and shaking-down the resi-

dents of the wing, and informing them that Landfair was to blame. Defendants contend that even if such retaliation did occur, plaintiff has failed to allege the deprivation of a protected liberty or property interest. *See Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981). Such an interest may only arise out of the Due Process Clause itself or state law. *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 868–69, 74 L.Ed.2d 675 (1983). While it is true that pre-trial detainees may not be punished prior to an adjudication of guilt, *Salazar v. Chicago,* 940 F.2d 233, 241–42 (7th Cir.1991), not all acts taken against them violate the Constitution. Rather, pre-trial detainees must risk sufficiently serious injury in order to invoke the Constitution.

Landfair does not present us with the kind of allegations that implicate the Due Process Clause. His claim that defendant Houser restricted television and telephone privileges on the wing does not rise to the level of serious punishment, nor do his claims that he was prevented from receiving visitors or shopping before being transferred to Joliet. While his claim that his life was placed in danger by virtue of defendant Houser's statements to the other inmates might rise to the level of a violation, there is no allegation that he actually suffered an injury or that an attack was imminent. Without more, plaintiff cannot bring a § 1983 claim based on these allegation, and therefore we grant Defendants' motion to dismiss.

### C. Equitable Claims

Finally, we address plaintiff's request for equitable relief. Because his claims arise out of his pretrial detention at the CCJ, Landfair is bound by the consent decree entered in *Duran v. Elrod,* No. 74 C 2949 (N.D.Ill. April 9, 1982), despite the fact that he was not at the facility when the decree was entered. *Martin v. Davies,* 917 F.2d 336, 339 (7th Cir.1990), *cert. denied,* 501 U.S. 1208, 111 S.Ct. 2805, 115 L.Ed.2d 978 (1991). Equitable claims arising out of violations of the consent decree must be presented through a contempt proceeding before the

supervising court. *Martin,* 917 F.2d at 339. Accordingly, Landfair's claims for equitable relief must be dismissed.[6]

### III. Conclusion

For the reasons state above, Defendants' motion is granted in part and denied in part. It is so ordered.

---

6. In any event, the fact that Landfair has since been transferred from the CCJ to the Illinois Department of Corrections facility at Joliet effectively moots his claim. *Martin,* 917 F.2d at 339.