Willie ROBINSON, Plaintiff,

v.

ILLINOIS STATE CORRECTIONAL CENTER (STATEVILLE) WARDEN; Salvador A. Godinez, Superintendent; Anthony Ramos, Defendants.

No. 94 C 1688.

United States District Court,
N.D. Illinois,
Eastern Division.

March 29, 1995.

Willie Robinson, Joliet, IL, pro se.

Susan Takata O'Leary, Ill. Dept. of Corrections, Chicago, IL, for Ill. State Correctional Center, (Stateville) Warden.

Edward B Glicken, Ill. Atty. General's Office, Chicago, IL, Susan Takata O'Leary, Ill. Dept. of Corrections, Chicago, IL, for Salvador A. Godinez, Anthony Ramos.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Willie Robinson brings this three count complaint under 42 U.S.C. § 1983 against defendants Salvador A. Godinez, Warden of the Stateville Correctional Center, and Anthony Ramos, Superintendent of Segregation Unit II at Stateville. Presently before us is defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, defendants' motion is granted in part and denied in part.

### I. Background

Plaintiff is one of the many inmates housed at the Stateville Correctional Center. He currently resides in Segregation Unit II, a portion of the prison where inmates are separated from each other for most of the day. Robinson complains that defendant Ramos prohibits inmates in Segregation Unit II from purchasing certain items at the commissary, such as canned goods and "anything else they want[ ]." Complaint, at 4. Apparently this prohibition applies only to inmates in segregation, and plaintiff contends that such a rule violates his federal and state rights, although he does not specifically indicate which ones.

Robinson's second claim involves the reduction of his visitation time from two hours to only one hour. Plaintiff claims that this reduction in visitation time occurred upon his being assigned to segregation for a term of one year. Robinson contends that he complained to Godinez and Ramos about his visitation time in writing, but that neither of them have rectified the matter.

Finally, plaintiff claims that the conditions in Segregation Unit II fall below the minimal standards set by the Eighth Amendment. In particular, plaintiff contends that there are problems with "Heat Ventalation [sic]; Cooling Ventalation [sic]; Unsanitation [sic] Toilet Area; Roaches; Unclean Bedding: because no supply is being passed out on a Weekly Basis; Unsanitation [sic] Food Preparation Area; Bed Bugs; Subfezzing [sic] Weather: because Broken Windows...." Complaint at 4–5. Although plaintiff does not explain how he has been injured by these conditions, he does allege that they pose a dangerous risk to his health and well being.

Defendants have moved to dismiss the complaint, arguing (1) that plaintiff's official capacity claims are barred by the Eleventh Amendment, (2) that plaintiff has failed to allege sufficient personal involvement by them in the alleged deprivations, and (3) that his complaints do not rise to the level of a constitutional violation. Plaintiff has filed a "Motion of Disposition" in response, asking us not to dismiss the complaint. As plaintiff's "Motion" is more akin to a response brief, we will consider it as such and deny his "Motion of Disposition" as moot.

### II. Discussion

 A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir.1991). At this stage in the litigation, we take plaintiff's version of the facts alleged in the complaint to be true, and construe all reasonable inferences in his favor. *Bane v. Ferguson*, 890 F.2d 11, 13 (7th Cir.1989). Although unsupported conclusions of fact and conclusions of law are not sufficient to withstand a motion to dismiss, *Cushing v. City of Chicago*, 3 F.3d 1156, 1160–61 n. 5 (7th Cir. 1993), pro se complaints such as this one are held to a lesser standard than are those written by practicing attorneys. *Kelley v. McGinnis*, 899 F.2d 612, 616 n. 8 (7th Cir. 1990).[1]

---

1. At the outset, we observe that plaintiff does not explicitly state in his complaint whether he is suing defendants in their official or personal capacities, or both. While we generally require plaintiffs to expressly indicate if any of their claims are against defendants personally, *Meadows v. State of Indiana*, 854 F.2d 1068, 1069 (7th Cir.1988), we read the allegations of Robinson's complaint as implicating defendants in both capacities. Plaintiff contends that defendants knew of the alleged deprivations and failed to remedy them, or that they caused the alleged violations by dint of their supervisory authority. While he does not use the terms "policy" or "custom," *see*

## A. Restrictions on Commissary Purchases

Plaintiff contends that defendants' restriction on the types of commissary items that may be purchased by inmates in segregation violates federal and state law. As plaintiff does not articulate what "law" he is referring to, we will examine his claim under the three most obvious possibilities. First, if plaintiff is raising a due process argument, he must demonstrate that he was deprived of a protected property or liberty interest in commissary privileges that arose out of state law or the federal constitution. *See Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989). Although Illinois prison regulations permit the establishment of commissaries, Ill.Admin.Code tit. 20, § 210.20(a), neither prison regulations nor state statutes establish a right to commissary privileges. *See* 730 ILCS 5/3-7-2a (regulating commissary prices); Ill.Admin.Code tit. 20, § 504.20(c) (prohibiting certain types of punishment, but not mentioning the restriction of commissary access). Nor can plaintiff reasonably contend that the Constitution embodies some right of a prisoner to purchase anything he wants from the commissary while in the custody of the state. *See Campbell v. Miller*, 787 F.2d 217, 222 (7th Cir.), *cert. denied*, 479 U.S. 1019, 107 S.Ct. 673, 93 L.Ed.2d 724 (1986). Thus, plaintiff cannot prevail on a due process claim.

Second, plaintiff's claim appears to raise an equal protection argument, since he alleges that the commissary privileges of segregation inmates were restricted, while the privileges of inmates in the general population were not affected. Although prison officials cannot base the allocation of jobs or resources on impermissible factors such as an inmate's race, *see Black v. Lane*, 824 F.2d 561, 562 (7th Cir.1987), there is no indication that any such motivation was present in the instant case. Consequently, plaintiff cannot state an equal protection claim. *See Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir.1988) (segregation inmate failed to state a claim based on commissary restrictions).

Finally, we analyze whether plaintiff has sufficiently alleged a violation of the Eighth Amendment stricture against cruel and unusual punishment. In order to state a claim under the Eighth Amendment inmates must allege that prison officials acted with deliberate indifference to their health or safety, such that they were exposed to a substantial risk of serious harm. *See Farmer v. Brennan*, —— U.S. ——, ——, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). We need not address whether Robinson has alleged the requisite state of mind required by the Eighth Amendment, as his contention that he was denied commissary privileges does not implicate the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). Accordingly, count one of plaintiff's complaint is dismissed.

## B. Visitation Rights

As with his first claim, plaintiff does not indicate what federal constitutional right he is claiming was violated by restricting his visitation time to only one hour. Robinson does not appear to be stating an equal protection violation, as he does not contend that he is being treated differently from other inmates in segregation.[2] If he is alleging a procedural due process claim, he

*Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978), Robinson does allege the sorts of violations that would be caused by an official policy or custom of the Illinois Department of Corrections. And although plaintiff cannot recover monetary damages on any valid official capacity claims he may assert—as such claims are barred by the Eleventh Amendment and not cognizable under Section 1983—he may seek injunctive relief. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66–71 & n. 10, 109 S.Ct. 2304, 2309–12 & n. 10, 105 L.Ed.2d 45 (1989). Therefore, we dismiss those portions of plaintiff's complaint seeking monetary damages against defendants in their official capacities, but permit those official capacity claims for injunctive relief which we do not otherwise dismiss to go forward.

2. Nor can plaintiff contend that the disparate treatment between inmates in segregation and those in the general population amounts to an equal protection violation. *Cf. Beck*, 842 F.2d at 762 (segregation inmate with less exercise time and commissary privileges than those in general population did not state constitutional *violation*).

must satisfy two pleading requirements: (1) he must allege an interference with a protected liberty or property interest, and (2) he must establish that the procedures accompanying the deprivation were constitutionally infirm. *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989). As we have stated, a protected liberty interest can only arise from two sources—the Due Process Clause or state law. *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 868–69, 74 L.Ed.2d 675 (1983). Plaintiff cannot claim that the Due Process Clause itself protects his visitation rights, *see Thompson,* 490 U.S. at 460–61, 109 S.Ct. at 1908–09, and therefore must rely on state law to create a liberty interest in visitation. In order for protected liberty interests to arise from state law, the state statute or regulation must place "substantive limitations on official discretion," such that a particular outcome is mandated "upon a finding that the relevant criteria have been met." *Id.* at 462, 109 S.Ct. at 1909; *see Pardo v. Hosier,* 946 F.2d 1278, 1281 (7th Cir.1991).

■ Although plaintiff does not enumerate the sources of state law upon which he relies, it is at least arguable that 730 ILCS 5/3–7–2(f)[3] grants prisoners a protected liberty interest in receiving visitors. *See Gavin v. McGinnis,* 866 F.Supp. 1107, 1111 (N.D.Ill. 1994); *United States ex rel. Adams v. O'Leary,* 659 F.Supp. 736, 739 (N.D.Ill.1987). However, Robinson does not claim that he was denied the right to see particular visitors, as was the case in *Gavin* and *O'Leary.* Nor does he claim that the restrictions placed upon his visitation time effectively prevented him from receiving any visitors at all. Indeed, the regulation Robinson complains of appears to be a reasonable means by which Stateville tries to "preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). Accordingly, as plaintiff has failed to state a claim based on the reduction of his

visitation time, defendants' motion to dismiss count two is granted.

*C. Conditions of Confinement*

■ The conditions of a prisoner's confinement in a state facility implicate the Eighth Amendment's proscription against cruel and unusual punishment only if the "prisoner is deprived of the 'minimal civilized measure of life's necessities,'" *Lunsford v. Bennett,* 17 F.3d 1574, 1579 (7th Cir.1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)), and the defendants intentionally created such conditions or were deliberately indifferent to their occurrence. *Farmer,* —— U.S. at ——, 114 S.Ct. at 1977. Plaintiff makes the following complaints about the conditions of his incarceration: (1) inadequate heating, cooling and ventilation, as well as insufficient insulation due to broken windows, (2) unsanitary toilet area, (3) roaches and "Bed Bugs," (4) unclean bedding due to the unavailability of weekly supplies, and (5) unsanitary food preparation. All of these problems, he claims, place his health and well being at risk.

■ Although he does not indicate how the alleged failure to provide inadequate heating, cooling or ventilation has injured him, we read plaintiff's complaint as (just barely) stating a claim under Section 1983. Without doubt, prisoners must be provided with adequate heat and ventilation. *See Del Raine v. Williford,* 32 F.3d 1024, 1035 (7th Cir.1994); *Lewis v. Lane,* 816 F.2d 1165, 1171 (7th Cir.1987). Although plaintiff does not indicate exactly how hot or cold his cell became, such factual specificity is not required at this stage. Because he has alleged that temperatures in his cell placed his health and well being at risk, and claims of inadequate heating need not contain allegations of "frostbite, hypothermia, or similar infliction" in order to survive a motion to dismiss, *Del Raine,* 32 F.3d at 1035, we find

---

**3.** All of the institutions and facilities of the Department *shall* permit every committed person to receive visitors, *except* in case of abuse of the visiting privilege or when the chief administrative officer determines that such visiting would be harmful or dangerous to the security, safety or morale of the institution or facility. Clergy, religious chaplain and attorney visiting privileges shall be as broad as the security of the institution or facility will allow. 730 ILCS 5/3–7–2(f) (emphasis added).

that Robinson has made out a claim of sufficient seriousness to implicate the Eighth Amendment.

■ Plaintiff also fails to specifically allege that defendants' acted with the required state of mind in allowing this condition to occur, or that they were personally involved in causing them. However, he does claim to have informed personnel at Stateville of these conditions, and alleges that nothing was done to remedy the problem. Further, both defendants have supervisory control over the conditions at Stateville and are in better position than plaintiff to ascertain the individuals who would be directly responsible for the alleged conditions.[4] While we express no opinion as to the ultimate merits of Robinson's claim, because he may be able to present sufficient evidence to prove that the temperature in his cell posed a serious risk to his health, and that defendants were deliberately indifferent to this risk, we must allow this claim to go forward.

■ Plaintiff also bemoans the unsanitary conditions of the toilet area, the existence of roaches and bed bugs, and the lack of weekly bedding supplies. As with his previous allegations, he fails to outline the severity of these problem or the defendants' state of mind in allowing them to exist. We need not address the later issue, as plaintiff has failed to satisfy the objective component of the analysis. Although unpleasant, the conditions plaintiff complains of do not in themselves rise to the level of a constitutional violation. *Cf. Harris v. Fleming,* 839 F.2d 1232, 1234–36 (7th Cir.1988) (keeping prisoner in "filthy, roach-infested cell," without toilet paper for five days, soap and other toiletries for ten days, not sufficiently serious to state Eighth Amendment claim). Moreover, Robinson's failure to allege that he suffered any injury because of these conditions defeats any contention of their objective severity. *Id.* at 1235; *Hines v. Sheahan,* 845 F.Supp. 1265, 1269 (N.D.Ill.1994); *Chavis v. Fairman,* No. 92 C 7490, 1994 WL 55719, at *3, 1994 U.S. Dist. LEXIS 1850, at *15 (N.D.Ill. Feb. 22, 1994).

■ Finally, we address plaintiff's contention that the food preparation area at Stateville is unsanitary. Prisons are required to "provid[e] nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *French v. Owens,* 777 F.2d 1250, 1255 (7th Cir.1985), *cert. denied,* 479 U.S. 817, 107 S.Ct. 77, 93 L.Ed.2d 32 (1986). As plaintiff's complaint does not indicate that the conditions of the food service "present[ed] an immediate danger to [his] health and well being," Robinson cannot maintain this claim. *See Landfair v. Sheahan,* 878 F.Supp. 1106, 1113 (N.D.Ill.1995); *Chavis,* 1994 WL 55719, at *3.

## III. Conclusion

For the reasons set forth above, defendants' motion to dismiss counts one, two and part of count three of the complaint is granted, and the remainder of defendants' motion is denied. Plaintiff's "Motion for Disposition" is denied as moot. It is so ordered.

---

4. Moreover, plaintiff need not allege that he informed defendants of these climatic problems with his cell if it would be reasonable for the jury to infer knowledge on their part from the obviousness of the danger. *See Farmer,* —— U.S. at ——, 114 S.Ct. at 1981 ("Whether a prison official had the requisite knowledge of a substantial risk [is] a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."). However, the reasonableness of such an inference is better left for resolution at a later date.