Michael **ANTONELLI**, Plaintiff,

v.

Michael **SHEAHAN**, et al., Defendants.

No. 93 C 3955.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 16, 1994.

---

Michael Carmie Antonelli, pro se.

Terry L. McDonald, Douglas Staser Steffenson, Cook County State's Attys., Chicago, IL, for defendants Michael Sheahan, Sheriff, J.W. Fairman, Director, Superintendant Waznis, Brian Benewate, Ivory Avory.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Plaintiff Michael Antonelli brought this action under 42 U.S.C. § 1983 against defendants Michael Sheahan, J.W. Fairman, Superintendent Waznis, Brian Bennewate, Ivory Avery, Officer Peterson and Officer Hernandez for alleged constitutional deprivations while he was incarcerated as a pretrial detainee at the Cook County Jail. Defendants Sheahan, Fairman, Waznis, Bennewate, and Avery have filed a joint motion to dismiss plaintiff's complaint. For the reasons stated below, defendants' motion to dismiss is granted.[1]

## BACKGROUND

Plaintiff was a pre-trial detainee incarcerated with the Cook County Department of Corrections at Cook County Jail. Plaintiff's complaint contains twenty counts in which he challenges the confinement conditions at Cook County Jail. Plaintiff's claims are summarized as follows: 1) plaintiff was forced to sleep on a mattress on the floor of his unit because the jail was overcrowded; 2) prison officials opened his mail before he received it; 3) plaintiff was allowed outdoor exercise once every two weeks for no longer than one hour at a time; 4) plaintiff's unit had a cockroach and rodent problem; 5) prison officials did not properly maintain the law library; 6) prison officials did not properly maintain the commissary; 7) plaintiff's diet was nutritionally deficient and sometimes the food was spoiled; 8) plaintiff's unit had inadequate lighting and improper temperature regula-

---

1. Plaintiff's complaint names Michael Sheahan, J.W. Fairman, Superintendent Waznis, Brian Bennewate, Ivory Avery, Officer Peterson and Officer Hernandez as defendants. This motion to dismiss was brought on behalf of defendants Sheahan, Fairman, Waznis, Bennewate and Avery. The court finds, however, that plaintiff's action should also be dismissed as to defendants Peterson and Hernandez because service of the summons and complaint was not made upon these defendants within 120 days after the filing of the complaint as is required by Federal Rule of Civil Procedure 4(j).

tion; 9) prison officials denied plaintiff's requests to attend religious services; 10) plaintiff received inadequate medical care; 11) plaintiff's unit was inordinately noisy which caused his sleep to be interrupted; and 12) prison officials took some of plaintiff's personal items including pens, bags of coffee and a soap dish. Defendants seek to dismiss plaintiff's complaint in its entirety on the grounds that plaintiff has not stated any claims upon which relief can be granted. The court will address each of plaintiff's allegations in turn.

*ANALYSIS*

I. *Standard of Review*

█ In ruling on a motion for dismissal, the court must presume all of the well-pleaded allegations of the complaint to be true. *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977). In addition, the court must view those allegations in the light most favorable to the plaintiff. *Gomez v. Illinois State Bd. of Educ.,* 811 F.2d 1030, 1039 (7th Cir.1987). Dismissal is proper only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

█ Although plaintiff cites the Eighth Amendment in his complaint, plaintiff's § 1983 claims must be analyzed under the due process clause of the Fourteenth Amendment because of plaintiff's status as a pretrial detainee. Due process protects the right of a pretrial detainee not to be punished while the Eighth Amendment right to be free from cruel and unusual punishment is applicable only to those criminals who are serving a sentence after a formal adjudication of guilt. *Salazar v. City of Chicago,* 940 F.2d 233, 239 (7th Cir.1991); *Anderson v. Gutschenritter,* 836 F.2d 346, 348–49 (7th Cir.1988). Unlike a pretrial detainee, a sentenced inmate may be punished but that punishment may not be cruel and unusual under the Eighth Amendment. *Anderson,* 836 F.2d at 348 (citing *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979)).

The Supreme Court recognized the distinction in *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977):

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.... [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.

*Id.* at 671–72 n. 40, 97 S.Ct. at 1412–13 n. 40.

Therefore, the proper inquiry for a Fourteenth Amendment claim is whether the challenged conduct amounted to any kind of punishment. *Salazar,* 940 F.2d at 239–40. The standards for analyzing claims regarding conditions of confinement under both the Eighth and Fourteenth Amendments, however, are very similar. *See Id.* at 240 ("Punishment is punishment, and there is no reason why the term should mean two different things in the Eighth and Fourteenth Amendment contexts.").

█ In *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), the Supreme Court stated that in cases challenging the conditions of confinement, determining whether certain conduct constitutes punishment involves both a subjective and objective component. *Id.* at 298–302, 111 S.Ct. at 2324–26. Therefore, to prevail on a Fourteenth Amendment claim, plaintiff must prove both that defendants acted with deliberate indifference to plaintiff's needs (the subjective component), and that the alleged deprivations were sufficiently severe to rise to the level of a constitutional violation (the objective component). *Hines v. Sheahan,* 845 F.Supp. 1265, 1267 (N.D.Ill.1994) (citing *Wilson,* 501 U.S. at 298, 111 S.Ct. at 2324).

II. *Subjective Component*

█ To satisfy the subjective component of the Fourteenth Amendment analysis, a plaintiff must allege the requisite level of a

defendant's intent to punish plaintiff. The Seventh Circuit has held that a pretrial detainee alleging due process violations must show that the defendants acted with deliberate indifference to plaintiff's constitutional rights—meaning intentional or criminally reckless conduct. *Salazar*, 940 F.2d at 238.

Plaintiff in this case makes no claim that the defendants engaged in any of the alleged actions with the intent to punish plaintiff.[2] For example, plaintiff admits in Count I that the sleeping conditions complained of were due to the overcrowded conditions at Cook County Jail, rather than to any punitive intent on the part of defendants, thus demonstrating plaintiff's failure to meet the subjective component of the Fourteenth Amendment analysis.

### III. *Objective Component*

■ Plaintiff also fails to allege sufficiently serious deprivations to satisfy the objective component of the due process analysis. The Seventh Circuit has stated that, while recognizing "the extraordinarily difficult task prison administrators face in maintaining an appropriate prison environment," and being aware of the court's limited role in matters involving a state penal institution, "clearly prison officials have a responsibility to provide inmates with a minima of shelter, sanitation and utilities—basic necessities of civilized life." *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir.1989). "Inmates cannot expect the amenities, conveniences and services of a good hotel; however, the society they once abused is obliged to provide constitutionally adequate confinement." *Harris v. Fleming*, 839 F.2d 1232, 1235–36 (7th Cir.1988).

■ The objective component for the analysis of a due process claim therefore focuses on the nature of defendants' alleged acts and whether the conditions of confinement complained of by plaintiff "exceeded contemporary bounds of decency of a mature, civilized society." *Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir.1994) (citing *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir.1992)).

### A. *Conditions of Confinement*

#### 1. *Sleeping Conditions*

In Count I plaintiff complains that he was forced to sleep on a mattress on the floor at Cook County Jail due to overcrowded conditions at the prison. Plaintiff alleges that these sleeping conditions violated his constitutional rights.

This court agrees with other courts in this district that "unless aggravating circumstances exist, the Constitution is indifferent as to whether the mattress a detainee sleeps on is on the floor or on a bed." *Lynch v. Sheahan*, 92 C 1087, 1992 WL 132525 at *3 (N.D.Ill. May 29, 1992) (Conlon, J.). *See also, Hines v. Sheahan*, 845 F.Supp. 1265, 1269 (N.D.Ill.1994) (Grady, J.); *Chavis v. Fairman*, No. 92 C 7490, 1994 WL 55719 at *4 (N.D.Ill. Feb. 22, 1994) (Aspen, J.); *Powell v. Cook County Jail*, 814 F.Supp. 757, 759 (N.D.Ill.1993) (Shadur, J.); *Bowden v. Fairman*, No. 92 C 7613, 1992 WL 366905 (N.D.Ill. Dec. 2, 1992) (Shadur, J.). In this case, plaintiff has not allege any aggravating circumstances regarding his sleeping conditions nor that he suffered any injuries as a result of sleeping on the floor. Therefore, the court finds that the sleeping conditions alleged in plaintiff's complaint do not rise to the level of a constitutional violation.

#### 2. *Correspondence Claim*

In Count II plaintiff alleges that his constitutional rights were violated when prison employees opened some of his incoming mail, including documents from the court clerk, outside of plaintiff's presence before plaintiff received it.

■ A prison inmate has a constitutional right to be free from interference with his "privileged" mail, including communications from an inmate's attorney. *See Wolff v. McDonnell*, 418 U.S. 539, 577, 94 S.Ct. 2963, 2985, 41 L.Ed.2d 935 (1974) (mail sent by an attorney to an inmate was privileged and could not be read by prison officials outside of an inmate's presence). The *Wolff* rationale does not extend, however, to incoming

**2.** In fact, in Counts V, XIII, XIV, XVI and XX plaintiff specifically alleges that defendants have been negligent in the maintenance of the Cook County Jail which is clearly insufficient to satisfy the subjective component of the due process analysis.

mail from a court clerk because these communications are not privileged.

■ As noted by the Seventh Circuit in *Martin v. Brewer*, 830 F.2d 76 (7th Cir.1987), there are important distinctions between correspondence from an inmate's attorney and communications from court personnel:

> "with minute and irrelevant exceptions all correspondence from a court to a litigant is a public document, which prison personnel could if they want inspect in the court's files. It is therefore not apparent to us why it should be regarded as privileged and how [an inmate] could be hurt if the [prison official] read these documents before or after [the inmate] does."

*Id.* at 78. *See also, Stone–El v. Fairman,* 785 F.Supp. 711, 715–16 (N.D.Ill.1991). Therefore, the court finds that the opening of plaintiff's incoming correspondence from a court outside of plaintiff's presence does not constitute a deprivation of his constitutional rights. Because none of the incoming mail allegedly opened by prison employees outside of plaintiff's presence was privileged, the court finds that plaintiff fails to state a § 1983 claim.

### 3. *Recreation*

■ During his stay at Cook County Jail, plaintiff alleges that he was only permitted to exercise once every two weeks. Lack of exercise may rise to a constitutional violation "[w]here movement is denied and muscles are allowed to atrophy, the health of the individual is threatened and the state's constitutional obligation is compromised." *French v. Owens,* 777 F.2d 1250, 1255 (7th Cir.1985), *cert. denied,* 479 U.S. 817, 107 S.Ct. 77, 93 L.Ed.2d 32 (1986). *See also, Harris v. Fleming,* 839 F.2d 1232, 1236 (7th Cir.1988) ("Unless extreme and prolonged, lack of exercise is not equivalent to a medically threatening situation."). For example, in *Preston v. Thompson,* 589 F.2d 300 (7th Cir.1978), the Seventh Circuit found a constitutional violation where prisoners were never allowed out of their cells to exercise.

■ Generally, however, even severe restrictions on outdoor exercise do not violate due process where the pretrial detainee has opportunities for indoor activities. *See e.g., Stewart v. McGinnis,* 800 F.Supp. 604, 616 (N.D.Ill.1992), *aff'd,* 5 F.3d 1031 (7th Cir. 1993) (although inmates were not permitted to exercise outdoors during an 85–day lockdown period, they were able during the lockdown to leave their cells, to use the day room, to visit other cells and to go to the bathroom at any time, undercutting plaintiff's constitutional claim).

In this case, plaintiff's allegations clearly show that plaintiff enjoyed sufficient freedom of movement around the prison although he complains about the limited amount of outdoor exercise. In addition, plaintiff does not allege that he suffered from any adverse health effects due to the lack of outdoor exercise, nor does it appear from the complaint that plaintiff's health is threatened in any way due to his lack of outdoor physical exercise. Therefore, the court finds that plaintiff has failed to state a valid due process claim based on his alleged lack of outdoor recreational activity.

### 4. *Pest Control Problem*

■ In Count IV of his complaint plaintiff alleges that his living environment was infested with roaches and rodents that would crawl on him at night while he was sleeping. He states that in a sixteen month period his unit was sprayed twice by a pest control service to control the problem.

■ This court agrees with courts in this district that "[k]eeping vermin under control in jails, prisons and other large institutions is a monumental task" and that failure to do so, without any suggestion that it is a reflection of defendants' deliberate indifference is not a constitutional violation. *Bowden v. Fairman,* No. 92 C 7613, 1992 WL 366905 at *1 (N.D.Ill. Dec. 2, 1992). *See also, Hines,* 845 F.Supp. at 1268; *Chavis,* 1994 WL 55719 at *4; *Powell,* 814 F.Supp. at 759; *Lynch,* 1992 WL 132525 at *3.

In this case plaintiff has not alleged that defendants' failure to control the prison pest problem at Cook County is a reflection of defendants' intent to punish the inmates. In fact, plaintiff has admitted that while he was at Cook County the prison was sprayed twice by a pest control service to control the prob-

lem. Therefore, the court dismisses plaintiff's claim for failure to allege the requisite intent on the part of defendants.

### 5. *Food and Dining Conditions*

■ In Count VII plaintiff alleges that while incarcerated at Cook County he was served spoiled food and his forced diet was nutritionally deficient. Plaintiff does not provide any factual details regarding how often he was served spoiled food and in what ways his diet was nutritionally inadequate.

It is clear that prisons have an obligation to " 'provide nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.' " *French,* 777 F.2d at 1255 (quoting *Ramos v. Lamm,* 639 F.2d 559, 570–71 (10th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981)). Occasional service of spoiled food, however, cannot be said to deprive inmates of basic nutritional needs and does not present an immediate danger to the health of inmates. Unlike in *French,* where the kitchen and food storage areas were found to be unsanitary and infested with mice and roaches, and the pots were covered with uncleanable grime, in this case plaintiff has not alleged any conditions that would rise to the level of a constitutional violation. *See French,* 777 F.2d at 1255.

### B. *Access to Religious Service*

It is well established by the Supreme Court that convicted prisoners "clearly retain protections afforded by the First Amendment ..., including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987). There are, however, limits on a prisoner's First Amendment rights as the Court noted in *Jones v. North Carolina Prisoners' Union,* 433 U.S. 119, 125, 97 S.Ct. 2532, 2538, 53 L.Ed.2d 629 (1977):

> " '[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to in-

hibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law.' "

*Id.* (quoting *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974)). "Within these constraints, the prison must afford all inmates a reasonable opportunity to practice their religion." *Al–Alamin v. Gramley,* 926 F.2d 680, 686 (7th Cir.1991). In providing this opportunity, "prisons cannot discriminate against a particular religion." *Id.* (citations omitted).

■ In this case plaintiff alleges that for at least one month, his requests to attend Catholic Sunday church services were ignored and that both defendants Fairman, the Director of Cook County Jail and Sheahan, the Cook County Sheriff, should be held liable under § 1983.

Although the necessity to limit the number of inmates who can attend religious services at any one time may serve a legitimate penological objective, the court finds plaintiff's claim that he was denied any access to religious services during a one month period is sufficient to allege that he was denied a reasonable opportunity to practice his religion.

■ Although plaintiff has satisfied the objective component of the due process analysis, he has, however, failed to allege the requisite intent of defendants Fairman and Sheahan to satisfy the subjective component of the analysis.

■ To be liable under 42 U.S.C. § 1983, a defendant must have some measure of personal responsibility for the alleged constitutional deprivation. *Cygnar v. City of Chicago,* 865 F.2d 827, 847 (7th Cir.1989). "There is no doctrine of superior's liability in § 1983 actions; instead, the official must actually have participated in the constitutional wrongdoing." *Id.* (citations omitted). "Failure to take corrective action cannot in and of itself violate § 1983." *Soderbeck v. Burnett County,* 752 F.2d 285, 293 (7th Cir.), *cert. denied,*

471 U.S. 1117, 105 S.Ct. 2360, 86 L.Ed.2d 261 (1985).

■■■■■ A supervisory official can be liable, however, even if not directly involved in the constitutional deprivation, if the official knowingly, willfully or recklessly caused the deprivation by his action or failure to act. *Wilks v. Young,* 897 F.2d 896, 898 (7th Cir. 1990). Supervisors who are merely negligent, or even grossly negligent, in failing to detect or prevent subordinates' misconduct are not liable under § 1983. *Jones v. City of Chicago,* 856 F.2d 985, 992–93 (7th Cir.1988). The supervisor must know about the conduct and facilitate it, approve of it, condone it, or turn a blind eye to it. *Id.*

In this case, plaintiff does not make any allegations in his complaint to establish either direct or indirect personal involvement by defendants Fairman and Sheahan in the alleged constitutional deprivation. Plaintiff's complaint contains no allegations from which the court can deduce that these defendants were aware of plaintiffs' exclusion from religious services or that they had an opportunity to correct the situation. Without any basis from which to infer that defendants Fairman and Sheahan harbored any punitive intent toward plaintiff, the court must dismiss this claim.

### *CONCLUSION*

For the reasons stated above, defendants' motion to dismiss is GRANTED. Plaintiff's action as to defendants Peterson and Hernandez is also DISMISSED for failure to comply with Rule 4(j) of the Federal Rules of Civil Procedure. This case is DISMISSED in its entirety.