Michael C. **ANTONELLI,**
Plaintiff–Appellant,

v.

Michael F. **SHEAHAN, et al.,**
Defendants–Appellees.*

No. 94–3383.

United States Court of Appeals,
Seventh Circuit.

Submitted Nov. 28, 1995.**

Decided April 16, 1996.

\* By order of this court dated April 4, 1995, defendants Officer Peterson and Officer Hernandez, who were not served with a summons and the complaint, were removed from the docket in this appeal. The remaining appellees are Michael Sheahan, J.W. Fairman, Superintendent Waznis, Brien Bennewate, and Ivory Avery.

\*\* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that the parties could file a "Statement as to Need of Oral Argument." *See* Fed. R.App. P. 34(a); Cir. R. 34(f). No such statement has been filed. Accordingly, the appeal is submitted on the briefs and the record.

1424

Michael C. Antonelli (submitted), Oxford, WI, Plaintiff-Appellant Pro Se.

Douglas S. Steffenson and Terry L. McDonald, Office of the State's Attorney of Cook County, Chicago, IL, for Defendants-Appellees.

Before POSNER, Chief Judge, and FAIRCHILD and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Michael Antonelli, proceeding pro se, filed a complaint against several officers and officials of the Cook County Department of Corrections, alleging violations of his constitutional rights while an inmate at the Cook County Jail. 42 U.S.C. § 1983. The district court granted the defendants' motion to dismiss. *Antonelli v. Sheahan,* 863 F.Supp. 756 (N.D.Ill.1994). Mr. Antonelli appeals this judgment. We affirm in part, and reverse and remand in part.

## I

We turn first to Mr. Antonelli's submission that Officers Peterson and Hernandez were dismissed improperly from the litigation.

■ Mr. Antonelli's claims against persons identified in his complaint as "Officer Peterson" and "Officer Hernandez" were dismissed for failure to serve these defendants within 120 days after the filing of the complaint, as required by Federal Rule of Civil Procedure 4(m) (formerly Rule 4(j)). An inmate proceeding *in forma pauperis* (as Mr. Antonelli was) may rely on the Marshals Service to serve process. *Sellers v. United States,* 902 F.2d 598, 602 (7th Cir.1990). The inmate need furnish "no more than the information necessary to identify the defendant." *Id.* The Marshals Service's failure to complete service, once furnished with the necessary identifying information, is automatically "good cause" requiring an extension of time under Rule 4(m). *Id.; Graham v. Satkoski,* 51 F.3d 710, 713 (7th Cir.1995). In the instant case, the process receipts show that Mr. Antonelli did provide some specific information: not only the officers' last names, but also their specific place of work ("Post 78, Division 1, Cook County Jail"). However, the Marshals Service reported that more than one person with the last names Peterson and Hernandez were employed "here." What the Marshals Service meant by "here" is uncertain: If proper service was attempted, "here" would be the specific post described by Mr. Antonelli.

■ In light of our decision *infra* that some claims are properly stated against Officers Peterson and Hernandez, we conclude that a remand for evaluation is appropriate. *See Graham,* 51 F.3d at 712–13 (remanding for evaluation by the district court, stating that the district court's failure to "question the marshals' efforts" and its dismissal of defendants not served by the marshals could not be reconciled with *Sellers*). On remand, the district court must determine, from an objective standpoint, whether the marshals needed more information or whether instead they had failed their duty. The most obvious question in the instant case is whether the marshals reviewed the list of officers employed at Post 78 or, instead, relied on the list for a larger unit such as Division 1 or the entire jail. The district court is not limited to this question on remand; it should make whatever inquiry is necessary to determine whether the Marshals Service had met its obligation. If Mr. Antonelli prevails on this issue, or if he shows other "good cause," he should receive an extension of time under Federal Rule of Civil Procedure 4(m) to serve process on Officer Peterson and Officer Hernandez.

## II

We now turn to the allegations in the complaint.

### A.

Mr. Antonelli organized his claims into twenty counts, which may be summarized as follows: I) inadequate bedding that required he sleep on the floor; II) opened, delayed, and lost mail; III) lack of recreation; IV)

living unit infested with cockroaches and mice; V) negligence in operating the law library; VI) deficient commissary; VII) inadequate food; VIII) deficient lighting; IX) denial of religious services; X) deficient medical attention; XI) excessive noise at night; XII) deprivation of personal property; XIII) failure to treat psychological condition; XIV) failure to control and protect from improper air temperature; XV) lack of a public library and of material to read; XVI) negligent maintenance of the building; XVII) arbitrary lockdowns; XVIII) inadequate grievance procedures; XIX) illegal post-conviction detention; XX) negligent hiring, training, supervision, and retention of personnel.

#### 1.

■■■ We review *de novo* a dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *Murphy v. Walker,* 51 F.3d 714, 717 (7th Cir.1995) (per curiam). "We accept all the factual allegations in the complaint and draw all reasonable inferences from these facts in favor of the plaintiff." *Arazie v. Mullane,* 2 F.3d 1456, 1465 (7th Cir.1993). A claim may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). "[A]llegations of the *pro se* complaint [are held] to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (per curiam). Accordingly, "*pro se* complaints are to be liberally

construed." *Wilson v. Civil Town of Clayton, Ind.,* 839 F.2d 375, 378 (7th Cir.1988).

#### 2.

■■■ Several of Mr. Antonelli's claims allege that he was subjected to unconstitutional conditions of confinement.[1] The Eighth Amendment prohibits "cruel and unusual punishment" of a prisoner. U.S. Const. amend. VIII. In order to violate the Eighth Amendment, the condition of confinement must be a denial of "basic human needs" or "the minimal civilized measure of life's necessities." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). The infliction must be deliberate or otherwise reckless in the criminal law sense, which means that the defendant must have committed an act so dangerous that his knowledge of the risk can be inferred or that the defendant actually knew of an impending harm easily preventable. *Miller v. Neathery,* 52 F.3d 634, 638 (7th Cir.1995) (discussing *Farmer v. Brennan,* — U.S. ——, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)); *Duckworth v. Franzen,* 780 F.2d 645, 652–53 (7th Cir.1985), *cert. denied,* 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986). The Due Process Clause prohibits any kind of punishment—not merely cruel and unusual punishment—of a pretrial detainee. *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979); *Salazar v. City of Chicago,* 940 F.2d 233, 239–40 (7th Cir.1991); *see also Anderson v. Gutschenritter,* 836 F.2d 346, 348–49 (7th Cir.1988).[2] A condition of confinement may be imposed on a pretrial confinee without violating the Due Process Clause if it is

1. Mr. Antonelli's complaint also contains several other claims, including that he was denied access to the courts under the First Amendment and that he was discriminated against in violation of the Equal Protection Clause.

2. The district court described Mr. Antonelli as a "pretrial detainee" and thus evaluated these claims not under the Eighth Amendment, the constitutional provision upon which Mr. Antonelli relied, but instead under the Due Process Clause of the Fourteenth Amendment. *Antonelli,* 863 F.Supp. at 759 (citing *Salazar,* 940 F.2d at 239–40; *Anderson,* 836 F.2d at 348–49). In his opening brief, Mr. Antonelli states that he was "a federal prisoner serving federal time at Cook County Jail and at the same time a pretrial

detainee awaiting trial on state charges." Defendants argue in their brief that, if Mr. Antonelli was a federal prisoner while in Cook County Jail, his claims should be evaluated under the Eighth Amendment. Because it is not clear from the record whether Mr. Antonelli was a pretrial detainee or a prisoner, we must, for purposes of our review, consider Mr. Antonelli's claims under both the Due Process Clause and the Eighth Amendment. On remand, the district court should determine as a preliminary matter what status—pretrial detainee or prisoner—is properly attributed to Mr. Antonelli and whether this status changed during the period of the alleged constitutional violations.

reasonably related to a legitimate and non-punitive governmental goal. It may not be arbitrary or purposeless. *Bell,* 441 U.S. at 539, 99 S.Ct. at 1874. "Retribution and deterrence are not legitimate nonpunitive governmental objectives." *Id.* at 539 n. 20, 99 S.Ct. at 1874 n. 20. Therefore, the infliction may not derive from an intent to punish. "Such a course would improperly extend the legitimate reasons for which such persons are detained—to ensure their presence at trial." *Sandin v. Conner,* —— U.S. ——, ——, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995). Also, there "is no doubt that preventing danger to the community is a legitimate regulatory goal," *United States v. Salerno,* 481 U.S. 739, 747, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987), that may, "in appropriate circumstances, outweigh an individual's liberty interest," *id.* at 748, 107 S.Ct. at 2102. A prison official violates the constitutional rights of a pretrial detainee only when he acts with deliberate indifference. Conduct is deliberately indifferent when the defendant acts in an intentional or criminally reckless manner. *Salazar,* 940 F.2d at 238.

### 3.

 A prisoner may not attribute any of his constitutional claims to higher officials by the doctrine of *respondeat superior;* "the official must actually have participated in the constitutional wrongdoing." *Cygnar v. City of Chicago,* 865 F.2d 827, 847 (7th Cir.1989) (citations omitted). However, "by treating this general principle of recovery under § 1983 as a strict rule of pleading and dismissing a complaint which otherwise states a valid claim," a court would run afoul of its mandate to interpret pro se complaints less stringently. *Duncan v. Duckworth,* 644 F.2d 653, 655 (7th Cir.1981) (citing *Haines*). In *Duncan,* the pro se complaint alleged suffering from a long delay before surgery and named the administrator of the prison hospital and the warden of the prison as defendants. *Id.* at 654. We reversed the Rule 12(b)(6) dismissal as to the hospital administrator, reasoning that "his position . . . justifies the inference at this stage of the proceeding that he does bear some responsibility for the alleged misconduct." *Id.* at 655. Furthermore, the administrator's position

would allow him, in a later stage of the case, to point to the ones really responsible for the delay in the prisoner's treatment. *Id.* We affirmed dismissal as to the warden because, in contrast to the administrator, "[i]t is doubtful that a prison warden would be directly involved in the day-today operation of the prison hospital such that he would have personally participated in, or have knowledge of, the kinds of decisions that led to the delay in treatment complained of by [the prisoner]." *Id.* at 656. Furthermore, the warden's presence in the case was "not needed to ensure that those more directly involved will be identified," because the hospital administrator, who remained in the case, could do so. *Id.* We noted, however, that, if the prisoner's situation was such that the warden could "have personally participated in, or have knowledge of," then Rule 12(b)(6) dismissal would not be appropriate. *See id.* at 655–56; *see also Billman v. Indiana Dep't of Corrections,* 56 F.3d 785 (7th Cir.1995) (reaffirming holding of *Duncan* in context of applying requirements of 28 U.S.C. § 1915(d)).

### B.

Having set forth these governing principles, we now turn to the task of applying them to the case before us. We caution the reader that we shall deal with each criterion separately. The fact that an allegation passes muster with respect to one issue does not mean that it survives when considered under the others.

### 1.

We shall first eliminate those claims against senior officials that, under the principles that we have just set forth, cannot stand.

Michael Sheahan, as Sheriff of Cook County, and J.W. Fairman, as Director of the Cook County Department of Corrections, were in positions like the warden in *Duncan,* far from most of the day-to-day decisions that may have affected inmates. Even if some of the written complaints that Mr. Antonelli allegedly filed were addressed directly to Sheriff Sheahan or to Director Fairman, neither could realistically be expected to be personally involved in resolving a situation

pertaining to a particular inmate unless it were of the gravest nature. However, Sheriff Sheahan and Director Fairman can be expected to know of or participate in creating systemic, as opposed to localized, situations. We therefore must sort the claims into clearly localized and potentially systemic; the former must be dismissed as to Sheriff Sheahan and Director Fairman.

 Our examination of the complaint convinces us that the following counts allege clearly localized, non-systemic violations that properly must be dismissed as to Sheriff Sheahan and Director Fairman: denial of Mr. Antonelli's requests to attend religious services (count IX); taking and destroying of Mr. Antonelli's property by jail staff (count XII); and ignoring Mr. Antonelli's requests for psychological treatment (count XIII). Only the first of these counts (count IX) names solely Sheriff Sheahan and Director Fairman as defendants; the other two counts (counts XII and XIII) state claims against another defendant as well. We shall discuss that aspect of these claims at a later point in the opinion.

The other claims against Sheriff Sheahan and Director Fairman allege systemic violations for which the Sheriff and the Director can be expected to have personal responsibility. We therefore cannot eliminate those claims at this point in our analysis.

2.

We now examine whether each claim adequately alleges the requisite breach of duty. At the outset, we note that, with respect to each claim, Mr. Antonelli names one or more defendants and alleges that they were "responsible" for the alleged acts or omissions. Although Mr. Antonelli does not specify exactly how each defendant was "responsible" for each particular occurrence, his allegations are selective. Mr. Antonelli does not name all defendants with respect to all claims, as if by rote; he instead lists particular defendants, and not others, as responsible for the violation.

 We also note that, at the end of his complaint, Mr. Antonelli alleges that "the actions [of the defendants] were deliberate and intentional and were done with malice towards plaintiff." He also alleges that "[s]aid actions were done with reckless disregard for the rights of plaintiff and with negligence towards his rights." These allegations, if read alone, are sufficient statements of "deliberate indifference" for purposes of a Rule 12(b)(6) motion. *Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir.1995) (citing *Swofford v. Mandrell*, 969 F.2d 547, 550 (7th Cir.1992)). Nevertheless, several of Mr. Antonelli's claims specifically allege negligence with particularity, a state of mind inconsistent with the requisite breach of duty necessary to constitute a constitutional deprivation. These particular allegations of negligence cannot be ignored. Accordingly, those claims must be dismissed. *See Thomas v. Farley*, 31 F.3d 557, 558–59 (7th Cir. 1994). Mr. Antonelli's claims of "negligence in maintaining [the] law library" (count V), "negligent maintenance of [the] building" (count XVI), and "negligent hiring, training, supervision, [and] retention" of staff (count XX) allege only negligence and cannot stand. The same is true for part of count XIV concerning temperature regulation in the jail: Specifically, the assertion that "[f]requently the heat or air control is neglected...." In the claim concerning the "deficient commissary" (count VI), Mr. Antonelli alleges that the staff "constantly miscalculates" his commissary balance, which must be considered, without more, a negligent act. Lastly, insofar as Mr. Antonelli alleges a "negligen[t] psychology department" in count XIII, the claim cannot survive.[3]

3.

In this subsection, we consider those remaining claims that fail to allege the requisite degree of harm to constitute a constitutional deprivation.

a.

The district court evaluated the objective seriousness of the harms alleged in six of Mr.

---

**3.** The remainder of count VI is not viable either, as explained in subsection 3(b)(iii), *infra*. How-

ever, for reasons given in subsection 4(b), *infra*, the remainder of counts XIII and XIV are viable.

Antonelli's claims. One of these claims, denial of access to religious services (count IX), is a claim of clearly localized nature made solely against Sheriff Sheahan or Director Fairman. It therefore must be dismissed for the reasons given in subsection 1, *supra;* we need not consider the matter further. The other five claims addressed by the district court concern inadequate bedding (count I), mail delivery (count II), lack of recreation (count III), pest infestation (count IV), and inadequate food (count VII).

■ We believe that the allegation about inadequate bedding—that Mr. Antonelli was forced to sleep on the floor for one night because of overcrowded conditions—does not pass muster under the prevailing standards. Charitably read, Mr. Antonelli alleges at most a temporary situation of a night's duration, *see Johnson v. Pelker,* 891 F.2d 136, 138–39 (7th Cir.1989), and an unintended one at that.

The other claims specifically addressed by the district court, counts II, III, IV, and VII, survive dismissal and will be discussed in subsection 4(a), *infra.*

### b.

The district court gave no explicit consideration to the claims in counts other than I, II, III, IV, VII, and IX, and the defendants offer no specific reason to justify their dismissal. However, we believe the appropriate disposition is sufficiently clear to permit our affirmance of the dismissal of several remaining claims. We therefore turn to those allegations.

■ i. Loss of Personal Property—Mr. Antonelli alleges that the staff of the jail has taken several pieces of personal property from him (count XII). Yet, he alleges neither that the deprivations took place according to established state procedure, nor that

he lacked an adequate remedy under state law. *Doherty v. City of Chicago,* 75 F.3d 318, 322–23 (7th Cir.1996). Thus, he has not stated a claim.

■ ii. Lockdowns—One of Mr. Antonelli's two claims in count XVII is that lockdowns in his unit are often arbitrary and capricious. That claim must be dismissed.[4] Mr. Antonelli has no general liberty interest in movement outside of his cell guaranteed by the Due Process Clause. *Smith v. Shettle,* 946 F.2d 1250, 1252 (7th Cir.1991).[5]

■ iii. Access to Courts—Mr. Antonelli claims that his right of access to the courts has been violated by the alleged opening, delaying, and stealing of his mail (count II), and by deficiencies in the jail commissary (count VI). Both of these claims fail because Mr. Antonelli does not allege any detriment to his access to the courts. *See Gentry v. Duckworth,* 65 F.3d 555, 558, 559 (7th Cir. 1995); *Shango v. Jurich,* 965 F.2d 289, 292–93 (7th Cir.1992).[6]

■ iv. Grievance Procedure—Mr. Antonelli also alleges that the grievance procedures in the Cook County Jail are inadequate to redress his grievances and thus violate his constitutional rights (count XVII). With respect to the Due Process Clause, any right to a grievance procedure is a procedural right, not a substantive one. *Azeez v. DeRobertis,* 568 F.Supp. 8, 10 (N.D.Ill. 1982) (citing *Shango v. Jurich,* 681 F.2d 1091, 1101–02 (7th Cir.1982)). Accordingly, a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause. *Id.*[7] Moreover, Mr. Antonelli's invocation of the judicial process indicates that the prison has not infringed his First Amendment right to petition the government for a redress of grievances. *Id.* at 10 (citing *Cruz v. Beto,* 405 U.S. 319, 321, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972)); *see*

---

**4.** Mr. Antonelli's other claim in count XVII, that he is not allowed movement within the lockdown situation because of racial discrimination, is a viable claim. *See* subsection 4(b)(v), *infra.*

**5.** Compare our discussion in subsection 4(a)(iv), *infra,* of Mr. Antonelli's claim of deprivation of exercise (count III).

**6.** Mr. Antonelli's claim in count II that other First Amendment rights were violated, however, is a viable claim. *See* subsection 4(a)(ii), *infra.*

**7.** *Accord Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir.1993) (per curiam) (citing *Azeez); Mann v. Adams,* 855 F.2d 639 (9th Cir.1988) (per curiam) (citing *Azeez* and *Shango); see also Shango,* 681 F.2d at 1100–02.

*also Flick v. Alba,* 932 F.2d 728 (8th Cir. 1991) (per curiam) (citing *Azeez*).

■ v. Post-Conviction Detention—According to Mr. Antonelli, he is being held in Cook County Jail after his conviction and with no case pending; the refusal to transfer him to a penitentiary allegedly denies him the opportunity to take advantage of rehabilitative programs and to earn good time credits (count XIX). However, Mr. Antonelli has no due process right to the correctional facility of his choice. *Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 2538–39, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976). He has no due process interest in the opportunity to earn good time credits. *See Sandin,* —— U.S. at ——, 115 S.Ct. at 2302 (holding that if "the State's action will inevitably affect the duration of [the] sentence," there is due process protection, but that there is no such protection for an action that merely *might* affect the duration of the sentence); *Bulger v. United States Bureau of Prisons,* 65 F.3d 48, 50 (5th Cir.1995). Lastly, participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee. *See Sandin,* —— U.S. at ——, 115 S.Ct. at 2301. Mr. Antonelli's claims in count XIX are not viable.

### 4.

Several of Mr. Antonelli's claims do survive dismissal under Federal Rule of Civil Procedure 12(b)(6).

### a.

We consider first the remaining claims that were specifically addressed by the district court.

■ i. Pest Infestation—As to Mr. Antonelli's claim of pest infestation (count IV), the district court concluded that his allegation that the prison was sprayed twice by a pest control service was inconsistent with deliberate indifference.· *Antonelli,* 863 F.Supp. at 761–62. The district court was correct in indicating that it is possible for a complaint to fail if facts are alleged that are inconsistent with assertions of deliberate indifference. *Thomas v. Farley,* 31 F.3d 557,

558–59 (7th Cir.1994). Two pest-control sprayings in sixteen months, however, may have been seriously insufficient to deal with the condition that Mr. Antonelli alleges: cockroaches that were "everywhere," "crawling on his body" (along with mice) and "constantly awaken[ing]" him, and "causing the environment to be unsanitary." Although the sprayings indicate some concern for Mr. Antonelli's right to be free from such conditions, they do not necessarily show that the defendants were less than deliberately indifferent to this right. Relying on *Harris v. Fleming,* 839 F.2d 1232, 1234–36 (7th Cir. 1988), some district courts in our circuit have recently held in published cases that pest infestation of prison cells is not serious. *Robinson v. Illinois State Correctional Center,* 890 F.Supp. 715, 720 (N.D.Ill.1995); *Hines v. Sheahan,* 845 F.Supp. 1265, 1269 (N.D.Ill.1994). However, the allegation of sixteen months of infestation and significant physical harm distinguishes Mr. Antonelli's claim from *Harris.* Indeed, in *Harris,* we specifically limited our holding by noting explicitly that, "at this stage," *Harris,* 839 F.2d at 1235, there was no constitutional violation. We read the district court cases relying on *Harris* to acknowledge that limitation in *Harris'* holding. As alleged by Mr. Antonelli, the pest infestation is a prolonged deprivation seriously impacting on his health. This claim, whether considered under the Due Process Clause or the Eighth Amendment, should not have been dismissed at this stage.

ii. Deliberate Obstruction of the Mail—In making his claims concerning mail delivery (count II), Mr. Antonelli alleges not only negligence, but also that the same events occurred due to deliberate actions; this latter allegation is consistent with deliberate indifference.

■ As explained in subsection. 3(b)(iii), *supra,* Mr. Antonelli has failed to state a claim in count II regarding denial of access to the courts. Nevertheless, we must still deal with the other allegations in count II. The district court was correct that prison employees can open official mail sent by a court clerk to an inmate without infringing on any privacy right. *See Martin v. Brewer,* 830 F.2d 76, 78 (7th Cir.1987). However, Mr.

Antonelli's allegation is written in broader terms; it alleges that "legal mail" was opened. This allegation could include privileged mail to or from an attorney. Mr. Antonelli also alleges that "mail delivery has been delayed for an inordinate amount of time" and that mail is sometimes stolen. Mr. Antonelli's allegations of violations of free speech and association are sufficient to state claims. *See Thornburgh v. Abbott,* 490 U.S. 401, 413, 109 S.Ct. 1874, 1881–82, 104 L.Ed.2d 459 (1989); *Procunier v. Martinez,* 416 U.S. 396, 413–14, 94 S.Ct. 1800, 1811–12, 40 L.Ed.2d 224 (1974). At this early stage in the litigation, we cannot determine, of course, whether the defendants may be able to justify the delays and openings of outgoing mail, *see Procunier,* 416 U.S. at 413–14, 94 S.Ct. at 1811–12, and of incoming mail, *see Thornburgh,* 490 U.S. at 413, 109 S.Ct. at 1881–82.

■ iii. Inadequate Food—Prisons have an obligation to " 'provid[e] nutritionally adequate food.' " *French v. Owens,* 777 F.2d 1250, 1255 (7th Cir.1985), *cert. denied,* 479 U.S. 817, 107 S.Ct. 77, 93 L.Ed.2d 32 (1986) (quoting *Ramos v. Lamm,* 639 F.2d 559, 570–71 (10th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981)). Mr. Antonelli's allegations in count VII state a cause of action under this legal standard. He alleges in his complaint not just "ransid food" [sic], but also a "nutritionally deficient" diet. Accordingly, Mr. Antonelli has stated a claim for violation of the Due Process Clause or the Eighth Amendment.

■ iv. Lack of Recreation—The district court was correct in stating the principle of law governing this claim: Lack of exercise may rise to a constitutional violation in extreme and prolonged situations where movement is denied to the point that the inmate's health is threatened. *See Harris,* 839 F.2d at 1236; *French,* 777 F.2d at 1255; *see also Anderson v. Romero,* 72 F.3d 518, 527–28 (7th Cir.1995). We believe that Mr. Antonelli's allegations in count III satisfy this standard. Mr. Antonelli alleges that his area was not permitted to recreate "for periods up to seven weeks in succession," and at most, was called "once every two weeks for sessions of no longer than one hour at one time." He describes his "environment" as "about the size of a small house trailer with at least 37 other prisoners," in which "[t]here is no room to recreate." As a result, his "health and physical well being have deteriorated." In sum, Mr. Antonelli has alleged that he was restricted to his cell or unit for extended periods of time and had "no room" to exercise in his unit. If extraordinary circumstances require such restrictions, the government will no doubt raise them in due course. But at this stage, Mr. Antonelli has a viable claim for deprivation of exercise under the Due Process Clause or the Eighth Amendment.

b.

We now turn to claims that the district court did not discuss. Because we believe that the disposition of these remaining claims is sufficiently obvious, we shall address them at this point in order to expedite the district court's resolution of this litigation.

■ i. Psychological Treatment and Deprivation of Needed Medication—Although Mr. Antonelli does not have a claim insofar as he alleges a "negligen[t] psychology department," he has stated a claim in that his "pleas" for psychological treatment were "ignored" (count XIII). Likewise, he has stated a claim in alleging that he has been deprived of medication that he alleges he needs (count X). Inmates may not be denied all treatment of a serious psychiatric or psychological condition, *Meriwether v. Faulkner,* 821 F.2d 408, 413–14 (7th Cir.), *cert. denied,* 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987), and they must receive adequate medical care, *Farmer v. Brennan,* —— U.S. ——, ——, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994); *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The allegations of Mr. Antonelli's complaint are sufficient to withstand a motion to dismiss.

■ ii. Access to Library and to Reading Materials—Mr. Antonelli alleges in count XV that he "has been subjected to a form of forced idleness at Cook County Jail. Every time [I] requested to go to the inmate public library to read to bide the time, it was ignored. [I] later found out that Division 1 of the Cook County Jail has absolutely no

public library." To the extent that Mr. Antonelli may be suggesting that he has the right to leave his cell to go to a general reading library, he has no claim. *See Smith v. Shettle*, 946 F.2d 1250, 1252 (7th Cir.1991) ("Subject only to such restraints as the cruel and unusual punishments clause of the Eighth Amendment may place upon the severity of punishment, a state can confine a prisoner as closely as it wants....."). However, construing his claim liberally, Mr. Antonelli's allegation is that his access to reading material was greatly circumscribed. "[T]he arbitrary denial of access to published materials violates an inmate's first amendment rights," *Martin v. Tyson*, 845 F.2d 1451, 1454 (7th Cir.) (per curiam) (citing cases), *cert. denied*, 488 U.S. 863, 109 S.Ct. 162, 102 L.Ed.2d 133 (1988), as well as a pre-trial detainee's right not to be punished under the Due Process Clause, *Kincaid v. Rusk*, 670 F.2d 737, 743–44 (7th Cir.1982). *See* also *Bell v. Wolfish*, 441 U.S. 520, 545–52, 99 S.Ct. 1861, 1877–81, 60 L.Ed.2d 447 (1979).[8] At this stage, we do not know whether the alleged denial of access is arbitrary or instead has a legitimate justification. Thus, dismissal of count XV, to the extent it alleges a denial of access to reading materials, is inappropriate at this point.

Mr. Antonelli also claims that the lighting in his unit and in the "day room" is so weak that reading "hurt[s] his eyes" (count VIII). Any right to access to printed materials protected by the First Amendment and (in the case of a pre-trial detainee) the Due Process Clause is necessarily implicated where there is objectively insufficient lighting to enable reading. Also, if the lighting conditions were objectively insufficient, they may have violated the Eighth Amendment as well. *See Shelby County Jail Inmates v. Westlake*, 798 F.2d 1085, 1088 (7th Cir.1986). Once again, the question of whether the alleged infringement on the ability to read is arbitrary or instead legitimately justified cannot be resolved at this stage.

iii. Excessive Noise at Night—Mr. Antonelli alleges in count XI excessive noise at night in his unit. His claim alleges a significantly more serious situation than the one presented in *Lunsford v. Bennett*, 17 F.3d 1574 (7th Cir.1994), which concluded that a few hours of periodic loud noises did not pose a serious risk of injury. *Id.* at 1580. In Mr. Antonelli's case, the noise occurred every night, often all night, interrupting or preventing his sleep. *See Williams v. Boles*, 841 F.2d 181, 183 (7th Cir.1988) (infliction of incessant noise, even if it causes only agony and not enduring injury, may be a due process violation). We conclude that the complaint states a claim under the Due Process Clause or the Eighth Amendment.

iv. Failure to Protect from Cold Temperature—Mr. Antonelli alleges in count XIV exposure to extremely cold indoor air temperature—specifically, through the staff's failure to provide blankets. Prisoners have a right to protection from extreme cold. *Murphy v. Walker*, 51 F.3d 714, 720–21 (7th Cir.1995) (per curiam). Although, as we concluded in subsection 2, *supra*, Mr. Antonelli does not have a claim with regard to neglect of the temperature regulation in the jail, he has stated a claim for lack of protection from cold temperature under the Due Process Clause or the Eighth Amendment.

v. Discrimination on the Basis of Race in Prison Routine—Finally, one of Mr. Antonelli's claims in count XVII is that he is seldom allowed "movement" within the lockdown situation because he is white and most of the staff is black and because it is "the custom and practice" in the jail to discriminate against whites. Because Mr. Antonelli suggests that discriminatory motives impelled discriminatory treatment of him, he has stated an equal protection claim. *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).[9]

8. The denial of reading material does not state a claim under the Eighth Amendment, since it is not a deprivation of "basic human needs" or "life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). However, this particular failure to state a claim under the Eighth Amendment does not have any practical significance in Mr. Antonelli's case, since the claim is independently viable under the First Amendment.

9. None of Mr. Antonelli's other claims (spread throughout the complaint) alleging equal protection violations suggest that the defendants

## Conclusion

The judgment of the district court is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

treated him differently based on an improper classification. Accordingly, the allegations in Mr. Antonelli's other claims are not sufficient to state equal protection violations.