Gordon R. STEIDL, Plaintiff–Appellant,

v.

Richard B. GRAMLEY, Defendant–Appellee.

No. 96–2073.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 4, 1997.

Decided Aug. 11, 1998.

740

Jerold S. Solovy, Richard P. Steinken (argued), Edward J. Neveril, Jenner & Block, Chicago, IL, for Plaintiff–Appellant.

Claudia E. Sainsot, Office of the Attorney General, Chicago, IL, Paul Racette (argued), Office of the Attorney General, Civil Appeals Division, Chicago, IL, for Defendant–Appellee.

Before CUDAHY, FLAUM, and DIANE P. WOOD, Circuit Judges.

CUDAHY, Circuit Judge.

The plaintiff appeals from an order dismissing his complaint for "failure to state a claim upon which relief can be granted," Fed.R.Civ.P. 12(b)(6). The complaint alleges that the warden of the Pontiac Correctional Center failed to protect the plaintiff from an attack that occurred while the plaintiff was confined within Pontiac's Condemned Unit, an enhanced security section for prisoners sentenced to death. According to the complaint, two inmates assaulted the plaintiff in the Unit's exercise yard on May 17, 1994; they slashed the plaintiff's face and neck with a blade, inflicting wounds that required at least 35 sutures and two days in the hospital and that caused permanent disfigurement.

A prison official can violate the Eighth Amendment by failing to take reasonable steps to protect inmates from a known, substantial threat to their safety. *See Farmer v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The official must have actual knowledge of "a substantial risk of serious harm." *Id.* It is not enough that he failed to address "a significant risk that he should have perceived but did not." *Id.* at 838, 114 S.Ct. 1970. Therefore this complaint, which alleges that the defendant "knew or should have known that as a result of the disappearance of [a] razor blade in the [Condemned Unit] on April 25, 1994, the chances of inmate-on-inmate violence were greatly enhanced," ¶ 1.13, does not state a claim under the Eighth Amendment. The Supreme Court expressly rejected the suggestion that a prison official violates the Eighth Amendment when he might have known of a risk of harm, or in any event *should have* known. *See Farmer*, 511 U.S. at 837–38, 114 S.Ct. 1970. Although the complaint also asserts that "[t]he failure of the defendant to protect the plaintiff from

the attack on May 17, 1994 amounted to deliberate indifference," ¶ 1:15; "which is a correct statement of the required state of mind," *Thomas v. Farley*, 31 F.3d 557, 558 (7th Cir.1994), the assertion is inconsistent with the complaint's factual allegations. When factual allegations conflict with a legal conclusion, the factual allegations are decisive. *Id.* at 558–59; *cf. Antonelli v. Sheahan*, 81 F.3d 1422, 1429 (7th Cir.1996).

 The plaintiff also contends that no guards were stationed in the towers or on a catwalk overlooking the Condemned Unit at the time he was attacked, and that he will be able to show that he would not have been attacked if there had been guards in the towers. According to the plaintiff, the lack of guards in the towers violated a prison policy requiring that the towers be occupied at all times. But these circumstances do not involve any act or omission by the warden, which is essential to liability under 42 U.S.C. § 1983. It is uncontested that the prison warden is not *directly* involved in such aspects of the day-to-day operations at Pontiac. The plaintiff maintains that the warden "is the person *ultimately* in charge of, and responsible for, all day-to-day operations" at Pontiac, ¶ 4 (emphasis added), but "[t]he general responsibility of a warden for supervising the operation of a prison is not sufficient to establish personal liability." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995); *see Antonelli*, 81 F.3d at 1428.

 The plaintiff never comes to grips with the central issue in this case—the absence of vicarious liability in a § 1983 action. The plaintiff argues that the warden would be liable for "knowingly ignor[ing] prison policies requiring that two towers and a catwalk be manned with guards." Br. of Pl.-Appellant 21. If the warden were aware of "a systematic lapse in enforcement" of a policy critical to ensuring inmate safety, his "failure to enforce the policy" could violate the Eighth Amendment. *Goka v. Bobbitt*, 862 F.2d 646, 652 (7th Cir.1988). The liability would stem from condoning a constitutional deprivation, and it would be direct, not vicarious. A warden is not liable for an isolated failure of his subordinates to carry out prison policies, however—unless the sub-

ordinates are acting (or failing to act) on the warden's instructions. *Cf. Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir.1997); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir.1995); *Shaw v. Stroud*, 13 F.3d 791, 798–99 (4th Cir.1994). There is language in *Antonelli* that perhaps suggests that at the pleading stage a warden would be expected to know of or participate in any incident affecting the entire prison population. *See* 81 F.3d at 1428–29. But that is not the holding of *Antonelli*; none of the viable Eighth Amendment claims in *Antonelli* involved a one-time, prison-wide situation. *See id.* at 1431–33.

Although we must give the plaintiff the benefit of the doubt in reading between the lines of his complaint, *see LeBlang Motors v. Subaru of Am., Inc.*, 148 F.3d 680, 689 (7th Cir.1998), we do not believe that this complaint implicitly asserts a systematic lapse in prison security that was known to the warden—for example, towers regularly left deserted. The gravamen of the complaint is that the plaintiff was left vulnerable to attack because there were no guards in the towers on a particular day at a particular time. No amount of discovery could produce evidence to turn this claim into an Eighth Amendment violation by the warden. Discovery might reveal that no guards were in the towers because they were running personal errands for the warden per the warden. Or it might transpire that the inmates who attacked the plaintiff were paid by the warden to do so. While we have no reason to believe that either of these scenarios is likely, they demonstrate the possibility that the plaintiff could prove a set of facts in support of *some* Eighth Amendment claim. But it would not be this claim—just as a complaint that pleads negligence when intentional harm is required does not state a cause of action simply because evidence of intentional conduct might turn up.

For the purposes of a motion to dismiss, a warden cannot be assumed to be directly involved in the prison's day-to-day operations. *See Duncan v. Duckworth*, 644 F.2d 653, 656 (7th Cir.1981). This principle does not impose a substantive limitation on a warden's liability beyond the established one

against vicarious liability. Nor does it raise the bar for the pleadings of a class of civil rights plaintiffs. It is simply the uniform application of a rule of construction: an inference that a warden is directly involved in a prison's daily operations is not reasonable. This case does not present the question whether a suit against a warden for an isolated or local incident would state an Eighth Amendment claim if it explicitly contended that the warden was directly involved in day-to-day management, so our view on that point is not binding. But presumably such a complaint would at least survive a motion to dismiss if it were otherwise sound. (The pleading must also satisfy Rule 11(b), and discovery would not necessarily be the next step, *cf. Crawford–El v. Britton*, — U.S. —, —–—, 118 S.Ct. 1584, 1596–98, 140 L.Ed.2d 759 (1998), but those are separate issues.) The prison might be very small, the title "warden" might be used in an unusual way, or a warden might have temporarily taken on direct management of some aspects of the prison due to special circumstances. Nothing of that sort is alleged here. The complaint was drafted with the assistance of counsel, and the plaintiff had an opportunity to "amend[ ] the complaint to name any correctional officials directly responsible for the mishap." Rule to Show Cause, R. 19, at 1; *see Billman v. Indiana Dep't of Corrections*, 56 F.3d 785, 789–90 (7th Cir.1995). The plaintiff has not drawn into question any of our precedents. Taking an independent look at the matter, we conclude that the complaint was properly dismissed.

Although the district court described the dismissal as "without prejudice," we are satisfied that this was the court's final decision, particularly in light of the court's next sentence: "The case is terminated." *See Le-Blang Motors*, 148 F.3d at 687. We are also satisfied that there was a timely notice of appeal in this case under Rule 4(c) of the rules of appellate procedure. *Cf. United States v. Kimberlin*, 898 F.2d 1262, 1265 (7th Cir.1990). The plaintiff changed lawyers between the district court and this court, and there was some question whether the plaintiff was represented by counsel at the time he filed his notice of appeal. The plaintiff's

trial counsel ultimately submitted an affidavit indicating that he was no longer representing the plaintiff at the relevant time, and the defendant does not dispute the accuracy of the affidavit.

AFFIRMED.